David Edward MYERS, Appellant,

v.

STATE of Texas, Appellee.

No. 11–05–00022–CR.

Court of Appeals of Texas,
Eastland.

Sept. 7, 2006.

Discretionary Review Refused
Dec. 6, 2006.

but less than two hundred grams. The trial court placed appellant on deferred adjudication for six years. In two points of error, appellant argues that the trial court erred in denying his motion to suppress because the State failed to demonstrate that probable cause existed for his warrantless arrest based either on his expired inspection sticker or on a confidential informant's tip. The tip had led to a proposed purchase of six ounces of cocaine. We affirm.

## Background Facts

At the hearing on appellant's motion to suppress, Officer R.R. Romano testified that he had been with the narcotics division of the Houston Police Department for twenty years. A confidential informant called Officer Romano and told him that appellant was trafficking in narcotics; appellant had called the informant about some cocaine. Officer Romano had successfully used information from the informant ten to fifteen times in the past and considered the informant to be both credible and reliable.

Officer Romano asked the informant to set up a meeting with appellant to have appellant deliver six ounces of cocaine to the informant. They agreed on the location for the delivery and that the delivery would be early in the afternoon of April 28, 2004. The informant described appellant as a six foot tall forty-year-old white male weighing two hundred pounds with thin hair and said that appellant would be driving a four-door green Acura Legend. The informant told Officer Romano that appellant would be leaving from his residence at the Saint Germaine Apartments on Main Street in downtown Houston.

Based on the information about the proposed deal with appellant, Officer Romano set up a team of officers for the afternoon

Brian W. Wice, Houston, for appellant.

Charles Rosenthal, Jr., District Attorney, Eric E. Kugler, Asst. District Attorney's Office, Houston, for appellee.

Panel consists of: WRIGHT, C.J., and McCALL, J., and STRANGE, J.

## OPINION

TERRY McCALL, Justice.

David Edward Myers entered a plea of guilty to the felony offense of possession of cocaine weighing more than four grams

of April 28. Officer T.D. Galligan, who subsequently made the traffic stop of appellant, was given a description of appellant's car; Officer Galligan was stationed in a church parking lot near the corner of Houston Avenue and Washington Street. Officer Romano wanted to corroborate the informant's information, and he began his surveillance at the Saint Germaine Apartments. At approximately the time that appellant was supposed to leave to meet the informant, Officer Romano saw appellant leaving the apartment complex in a four-door green Acura Legend. Although appellant was seated in the car, he appeared to match the physical description that the informant had given Officer Romano. Officer Romano followed appellant and told Officer Galligan to stop appellant's car.

Officer Galligan testified that he made a traffic stop of appellant because he saw that appellant had an expired inspection sticker. He said that he had been told to stop the green Acura Legend because there was a possible narcotics suspect in it. After the stop, Officer Galligan verified that the inspection sticker was expired. Officer Galligan took appellant's driver's license back to his patrol car to verify it; Officer Romano had arrived by then and met Officer Galligan at the patrol car. Officer Galligan told Officer Romano that he observed an expired inspection sticker, and Officer Romano noted the expired inspection sticker in his report. Officer Romano estimated that he arrived about three minutes after Officer Galligan made the stop.

Officer Galligan said that he placed appellant in the back of his patrol car after Officer Romano arrived. However, in answer to a subsequent question, Officer Galligan said that appellant was in the backseat of his patrol car under arrest when Officer Romano approached him to speak with him. Officer Galligan stated a number of times that he arrested appellant for an expired inspection sticker. Early in his testimony, Officer Galligan said that appellant was put in the back of his patrol car after the stop, that appellant was under arrest, and that appellant was not free to leave. Immediately thereafter, however, when asked why appellant was under arrest, Officer Galligan said that, "[a]t that time, he was being detained by the Narcotics Division." Referring to Officer Galligan's arrest, appellant's attorney asked who transported appellant to the station after the arrest. Officer Galligan answered, "We never went to the station after the arrest." Officer Galligan also said that appellant was in and out of the patrol car several times. Officer Romano first testified that appellant was outside of Officer Galligan's patrol car when Officer Romano first spoke with appellant, but then said that appellant may have been in the back of Officer Galligan's patrol car when he arrived.

When appellant learned that he was being detained as part of a narcotics investigation, he insisted on speaking to Officer Romano alone. Officer Romano and appellant visited away from the others. Officer Romano first asked appellant whether he had any large sums of money on him. Appellant responded that he had about $3,500 cash in his pocket, which corroborated the information that the confidential informant had provided to Officer Romano. Appellant voluntarily signed a form consenting to a search of his vehicle. Officer Romano testified that appellant read the written consent form before signing it. The written consent was witnessed by Officer Romano and another drug enforcement agent. Officer Romano testified that he made no threats or promises to appellant when he asked appellant to sign the consent to search form. Officer Galligan testified that at no time did he see Officer Romano act in an aggressive manner and

that he saw appellant sign the consent to search. Officer Galligan also testified that appellant was cooperative with him and Officer Romano. Appellant also gave Officer Romano credible information that led to the arrest of another person for drugs within forty-five minutes after Officer Romano arrested appellant.

Officer Romano placed appellant back in Officer Galligan's patrol car for safety purposes while Officer Romano searched appellant's car. Although appellant said he did not have any contraband in his car, Officer Romano found six ounces of cocaine inside appellant's gym bag. Officer Romano then advised appellant that he was under arrest for possession of cocaine.

Officer Romano asked appellant if he had any more narcotics at his home, and appellant said that he did. Appellant signed a consent to search his residence at the Saint Germaine Apartments. The officers discovered an additional thirteen grams of cocaine and some marihuana in one of appellant's apartments.

After the hearing on appellant's motion to suppress, the trial court denied the motion without making any written findings.

### Standard of Review

■ A trial court's ruling on a motion to suppress is reviewed for an abuse of discretion. *Balentine v. State,* 71 S.W.3d 763, 768 (Tex.Crim.App.2002). In reviewing a trial court's ruling on a motion to suppress, appellate courts must give great deference to the trial court's findings of historical facts as long as the record supports the findings. *Torres v. State,* 182 S.W.3d 899, 902 (Tex.Crim.App.2005); *Guzman v. State,* 955 S.W.2d 85, 87 (Tex. Crim.App.1997). Because the trial court is the exclusive fact-finder, the appellate court reviews evidence adduced at the suppression hearing in the light most favorable to the trial court's ruling. *Car-*

*mouche v. State,* 10 S.W.3d 323, 327 (Tex. Crim.App.2000). We also give deference to the trial court's rulings on mixed questions of law and fact when those rulings turn on an evaluation of credibility and demeanor. *Guzman,* 955 S.W.2d at 89. Where such rulings do not turn on an evaluation of credibility and demeanor, we review the trial court's actions de novo. *Id.; Davila v. State,* 4 S.W.3d 844 (Tex. App.-Eastland 1999, no pet.). Although the legal issue of probable cause to arrest is reviewed de novo in this case, the determination of that issue turns on mixed questions of law and fact.

■ When the trial court does not make explicit findings of fact, we review the evidence in the light most favorable to the court's ruling and assume the court made findings that are supported by the record and buttress its conclusion. *See Torres,* 182 S.W.3d at 902; *Carmouche,* 10 S.W.3d at 327–28. We are obligated to uphold the trial court's ruling on appellant's motion to suppress if that ruling was supported by the record and was correct under any theory of law applicable to the case. *State v. Ross,* 32 S.W.3d 853, 856 (Tex.Crim.App.2000).

### Warrantless Arrest for Expired Inspection Sticker

■ In appellant's first point, he argues that Officer Galligan did not have probable cause to arrest appellant because Officer Galligan was not in a position to observe the inspection sticker and that the inspection sticker had not in fact expired. Appellant contends that the arrest was illegal because it lacked probable cause. Appellant asserts that "[i]t is undisputed that [a]ppellant was immediately arrested by [Officer] Galligan for having an expired inspection sticker, placed in the latter's patrol unit, and was not free to leave." Based on this premise, appellant argues

that it was an immediate warrantless arrest by Officer Galligan, not an investigative detention, and that the immediate warrantless arrest tainted everything that followed. For the purposes of our discussion of appellant's first point, we assume that Officer Galligan immediately arrested appellant for an expired inspection sticker.

■ In Texas, a police officer may arrest an individual without a warrant only if (1) there is probable cause with respect to that individual and (2) the arrest falls within one of the exceptions specified in TEX. CODE CRIM. PROC. ANN. arts. 14.01–.04 (Vernon 2005 & Supp.2006). *McGee v. State*, 105 S.W.3d 609, 613–14 (Tex.Crim.App. 2003); *Stull v. State*, 772 S.W.2d 449, 451 (Tex.Crim.App.1989). Article 14.01(b) provides: "A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view."

■ A police officer has the authority to stop and temporarily detain a driver who has violated a traffic law. *Armitage v. State*, 637 S.W.2d 936, 939 (Tex.Crim. App.1982). Any peace officer may arrest without a warrant a person found committing a violation of the Texas traffic laws because a violation of the traffic laws constitutes probable cause to arrest the violator. TEX. TRANSP. CODE ANN. § 543.001 (Vernon 1999); *State v. Gray*, 158 S.W.3d 465, 469 (Tex.Crim.App.2005); *Snyder v. State*, 629 S.W.2d 930, 934 (Tex.Crim.App. 1982).

■ Appellant's arguments concerning whether Officer Galligan was in a position to observe the inspection sticker as appellant drove past and whether the inspection sticker had expired turn on the credibility and statements of the witnesses. As the trier of fact, the trial court was the exclusive judge of the credibility of the wit-

nesses and the weight to be given to their testimony. *State v. Ballard*, 987 S.W.2d 889, 891 (Tex.Crim.App.1999); *Joseph v. State*, 897 S.W.2d 374, 376 (Tex.Crim.App. 1995). Officer Galligan testified that appellant was not traveling fast because there was a stoplight and that he saw that the inspection sticker had expired. After the traffic stop, Officer Galligan verified that the inspection sticker had expired and then asked for appellant's license. Officer Romano also testified that, although he did not look at the inspection sticker, Officer Galligan told him that the inspection sticker had expired.

Appellant called Greg Morrison, a worker at an Express Lube, as a witness. Morrison testified that a vehicle inspection report was issued to a 1995 Acura Legend with appellant's license number and that the inspection would have been valid on April 28, 2004. However, Morrison stated that he did not know if the inspection sticker was actually placed on appellant's vehicle. TEX. TRANSP. CODE ANN. § 548.602 (Vernon Supp.2006) states that a person may not operate a motor vehicle unless a current and appropriate inspection sticker is displayed on the vehicle. In its brief, the State observes that appellant introduced a photograph of his car into evidence but did not introduce a picture of his allegedly valid inspection sticker.

Because Officer Galligan could not remember the precise dates on appellant's inspection sticker or its color, appellant argues that Officer Galligan's testimony that he saw the expired sticker from a distance of two feet was conclusory. In support of his argument, appellant relies on *Ford v. State*, 158 S.W.3d 488 (Tex. Crim.App.2005), which is distinguishable. The officer in *Ford* stopped the defendant for the traffic violation of following another

vehicle too closely.[1] The officer's statement that he saw the defendant "following too close" was held to be conclusory because there was no testimony of objective facts or circumstances that would allow an appellate court to determine whether the officer's conclusion was reasonable or not. TEX. TRANSP. CODE ANN. § 545.062(a) (Vernon 1999) lists a number of criteria—the assured clear distance between the vehicles, the speed of the vehicles, traffic, and the conditions of the highway—from which an officer may draw inferences and base his opinion that a vehicle is following too closely.

Officer Galligan's statement was based on only one objective criteria: an expired inspection sticker. "The essential requirement [for an inference to be drawn] is that mere speculation be not allowed to do duty for probative facts after making due allowance for all reasonably possible inferences."[2] Here, there was only one inference that could be drawn if Officer Galligan was believed. Officer Galligan's observance of the inspection sticker was not speculation. Officer Galligan's failure to remember the dates on the expired inspection sticker or its color only went to the weight of his testimony.

Based on Officer Galligan's testimony, the trial court may have decided that appellant was driving with an expired inspection sticker despite Morrison's testimony. Morrison did not see the new inspection sticker placed on appellant's car. The trial court could have reasonably concluded that the arrest of appellant for the expired inspection sticker was a legal arrest.[3] Appellant's first point of error is overruled.

### Warrantless Arrest Based on Confidential Informant's Information

Although our discussion of appellant's first point of error determines the outcome of this appeal, we address appellant's second point because of the inspection sticker controversy. In his second point, appellant argues that the State failed to demonstrate that probable cause existed for his warrantless arrest based on a confidential informant's tip. Appellant contends that Officer Galligan arrested him before he consented to the search of his car. Appellant relies on a number of cases for the proposition that the confidential informant's information was not sufficient to support a finding of probable cause for appellant's arrest. The facts of this case—a set-up drug buy based on corroborated information provided by a confidential informant—distinguish it from the cases cited by appellant. Appellant cites *Serrano v. State*, 123 S.W.3d 53, 60 (Tex.App.-Austin 2003, pet. ref'd); *Morris v. State*, 62 S.W.3d 817, 822 (Tex.App.-Waco 2001, no pet.); and *Parish v. State*, 939 S.W.2d 201, 204 (Tex.App.-Austin 1997, no pet.). *Serrano*, *Morris*, and *Parish* all involved the issue of whether the affidavit established probable cause for the issuance of a search

1. TEX. TRANSP. CODE ANN. § 545.062(a) (Vernon 1999) provides:

> An operator shall, if following another vehicle, maintain an assured clear distance between the two vehicles so that, considering the speed of the vehicles, traffic, and the conditions of the highway, the operator can safely stop without colliding with the preceding vehicle or veering into another vehicle, object, or person on or near the highway.

2. RUGGERO J. ALDISERT, LOGIC FOR LAWYERS: A GUIDE TO CLEAR LEGAL THINKING 27 (NITA 3d ed.1997) (citing *Tose v. First Pa. Bank, N.A.*, 648 F.2d 879, 885 (3rd Cir.1981) (quoting *Galloway v. United States*, 319 U.S. 372, 395, 63 S.Ct. 1077, 87 L.Ed. 1458 (1943))).

3. Officer Galligan could have conducted a search of appellant's vehicle incident to the arrest. *See Williams v. State*, 726 S.W.2d 99, 99–101 (Tex.Crim.App.1986).

882

warrant. They did not involve drug buys based on information received from confidential informants. Appellant also cites *Davis v. State*, 989 S.W.2d 859, 864 (Tex. App.-Austin 1999, pet. ref'd). In *Davis*, the court held that an uncorroborated anonymous phone tip did not create reasonable suspicion to justify an investigative stop. This case does not involve an anonymous phone tip. Appellant also cites *Smith v. State*, 58 S.W.3d 784, 792 (Tex. App.-Houston [14th Dist.] 2001, pet. ref'd). In *Smith*, the court held that, in the absence of any evidence establishing the confidential informant's reliability such as "her track record," the State failed to show that reasonable suspicion for a stop existed. *Id.* at 790. In this case, Officer Romano provided testimony concerning the confidential informant's track record.

▮▮▮ Probable cause for a warrantless arrest exists when the facts and circumstances of which an officer has personal knowledge or of which he has reasonably trustworthy information are sufficient to warrant a person of reasonable caution to believe that an offense was or is being committed. *Torres*, 182 S.W.3d at 901–02; *Amador v. State*, 187 S.W.3d 543, 548 (Tex.App.-Beaumont 2006, pet. filed). An appellate court must examine the cumulative information known by the arresting officers in determining whether probable cause existed for the arrest. *Torres*, 182 S.W.3d at 902. Probable cause must be based on facts, not opinions. *Id.*

Appellant's argument, under his second point, is again based on his assumption that Officer Galligan's "warrantless arrest" occurred before appellant gave his consent to search his car. Based on the record, the trial court may have concluded that appellant's argument under both points of error was based on a false premise because either there was no arrest by Officer Galligan or his arrest of appellant occurred after appellant's written consent to search was given.

Our analysis focuses on the steps leading to appellant's arrest for the cocaine. As detailed below, the facts support implicit findings by the trial court that there was reasonable suspicion for the stop, that there was no arrest of appellant by Officer Galligan, that appellant gave his voluntary consent to a search of his car, that the officers found cocaine during the search of the car, and that there was probable cause for Officer Romano's arrest of appellant. Alternatively, the facts support implicit findings by the trial court that there was reasonable suspicion for the stop, that appellant voluntarily consented to the search, that Officer Galligan then arrested appellant, that the officers found cocaine during the search of appellant's car, and that there was probable cause for Officer Romano's arrest of appellant.

▮▮▮ Circumstances short of probable cause may justify a temporary detention for the purpose of investigation. *Garza v. State*, 771 S.W.2d 549, 558 (Tex. Crim.App.1989). A temporary detention is justified when the detaining officer has specific articulable facts which, taken together with rational inferences from those facts, lead him to conclude that the person detained is, has been, or soon will be engaged in criminal activity. *Woods v. State*, 956 S.W.2d 33, 38 (Tex.Crim.App.1997). The articulable facts used by the officer must create some reasonable suspicion that some activity out of the ordinary is occurring or has occurred, some suggestion to connect the detainee with the unusual activity, and some indication that the unusual activity is related to crime. *Garza*, 771 S.W.2d at 558. A law enforcement officer may rely on information given to him by another officer. *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex.Crim.App.

2003). An investigative detention is a seizure under which the citizen is not free to leave, but it must be reasonable under the Constitutions of the United States and Texas. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Johnson v. State,* 912 S.W.2d 227, 235 (Tex.Crim.App. 1995); *Hartman v. State,* 144 S.W.3d 568, 571 (Tex.App.-Austin 2004, no pet.).

 Officer Romano had worked with the confidential informant on ten to fifteen previous occasions, and the informant had given him credible and reliable information leading to the seizure of narcotics. Officer Romano asked the informant to set up a meeting with appellant for appellant to deliver six ounces of cocaine to the informant. The confidential informant agreed to set up the meeting and described appellant, his car, when he would be departing the Saint Germaine Apartments, and where the meeting would be held. Officer Romano confirmed all of the information, except for the six ounces of cocaine, before he radioed Officer Galligan to stop appellant's car. It is reasonable to infer that Officer Galligan, as part of the team, was stationed along the route to the meeting place. Officer Romano testified that he called Officer Galligan directly and not

through dispatch. Officer Galligan said that he was in the church parking lot at the corner of Houston Avenue and Washington Street and that his job was to stop appellant's vehicle.

Based on the evidence, the trial court did not abuse its discretion in implicitly finding that there was reasonable suspicion to stop appellant's car. Nor did the trial court abuse its discretion in implicitly finding that the detention here was reasonable. *See Gray,* 158 S.W.3d 465.

### Was Appellant Arrested, and, if so, When Did the Arrest Occur?

 Appellant asserts that, after the stop, he was immediately arrested by Officer Galligan.[4] Although appellant argues that he had already been the subject of a warrantless arrest by Officer Galligan when he gave his consent, the testimony was contradictory and confusing on when Officer Galligan placed appellant under arrest. Officer Galligan stated a number of times that he "arrested" appellant for an expired inspection sticker. But even assuming that he did in fact "arrest" appellant, the first crucial determination is *when* did that alleged arrest occur. Viewing the entire record, the trial court as

---

4. Appellant cites *Burkes v. State,* 830 S.W.2d 922, 925 (Tex.Crim.App.1991); *McCraw v. State,* 117 S.W.3d 47, 53–54 (Tex.App.-Fort Worth 2003, pet. ref'd); and *Moore v. State,* 55 S.W.3d 652, 659 (Tex.App.-San Antonio 2001, no pet.), in support of the contention that Officer Galligan immediately arrested him. However, each of these cases are distinguishable from the present case. In *Burkes,* the Court of Criminal Appeals held that an officer's handcuffing of the defendant and placing him on the ground constituted an arrest, not a mere detention. In *McCraw,* the court held that the officers' conduct of blocking the defendant's vehicle in a driveway, ordering the defendant out of the vehicle at gunpoint, and directing the defendant to step to the rear of his vehicle constituted an arrest, not an investigative detention. In this case,

Officer Galligan merely placed appellant into the backseat of his patrol car for the expired inspection sticker. Thus, the facts in this case are distinguishable from the facts in *Burkes* and *McCraw.* In *Moore,* the court held that an officer's stop of the defendant constituted an arrest, as opposed to an investigative detention, where the officer did not perform any investigation before having the suspect transported to jail. Here, Officer Galligan performed an investigation, and the officers did not take appellant to the police station or jail as a result of Officer Galligan's "arrest" for the expired inspection sticker. Officer Galligan said that he verified the expired inspection sticker and took appellant's driver's license to his patrol car to verify it. Officer Galligan believed that he gave appellant's driver's license to Officer Romano.

finder of fact could have reasonably found that the "arrest" occurred after the written consent to search was given. Officer Romano testified that he arrived about three minutes after Officer Galligan stopped appellant and obtained appellant's written consent to search shortly thereafter. At the outset of Officer Galligan's testimony before he became confused, Officer Galligan was asked if he put appellant in the back of his patrol car before Officer Romano got to the scene. Officer Galligan stated that he did not. Officer Romano first testified that appellant was outside of Officer Galligan's patrol car when Officer Romano first spoke with appellant, but later said that appellant may have been in the back of the patrol car.

At one point, Officer Galligan testified that appellant was put in the back of the police car after the stop, that he was under arrest, and that he was not free to leave. But immediately following that testimony, Officer Galligan was asked, "What was he under arrest for?" Officer Galligan replied, "At that time, he was being detained by the Narcotics Division." Later, appellant's counsel asked, "[Appellant] was under arrest in the backseat of your marked patrol vehicle when Officer Romano arrived, correct?" Officer Galligan replied that that was not correct. In answer to a subsequent question, Officer Galligan said that appellant was in the backseat of his patrol car under arrest when Officer Romano approached him to speak with him. There was also testimony that appellant asked to speak with Officer Romano privately. The trial court was in a position to view both officers throughout their testimony and may have concluded that their initial statements supported a finding that the "arrest" did not occur prior to appellant executing the written consent.

 This case is unremarkable except for Officer Galligan's confusion over think-ing that he needed a traffic violation to make the stop and his confusion over what constitutes an arrest versus an investigative detention. The objective testimony shows that he had reasonable suspicion to stop appellant based on the set-up drug buy with the confidential informant, that the only indicia of arrest is his statement that he placed appellant under arrest (an expression of his subjective intent), that there is no evidence that he communicated to appellant that the latter was under arrest or that appellant knew he was under arrest, and that the statements about putting appellant in the patrol car are consistent with an investigative detention or an arrest. The subjective intent of law enforcement officials to arrest is irrelevant unless that intent is somehow communicated or otherwise manifested to the suspect. *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex.Crim.App.1996) (citing *Stansbury v. California*, 511 U.S. 318, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994)). Thus, although Officer Galligan said that appellant was under arrest when Officer Romano first spoke to appellant, other testimony including various statements by Officer Galligan indicates that appellant may have only been under investigative detention when he gave his consent to search.

 During the short time before the written consent to search was signed, was appellant "arrested" by Officer Galligan or was he under an investigative detention? Did appellant believe he was under arrest? The determination of custody must be made on an ad hoc basis, after considering all of the objective circumstances. *Shiflet v. State*, 732 S.W.2d 622, 629 (Tex.Crim.App.1985). The difficulty of distinguishing between investigative detentions and arrests was discussed in *Francis v. State*, 896 S.W.2d 406 (Tex.App.-Houston [1st Dist.] 1995, pet. ref'd), and by Judge Clinton in *Francis v. State*, 922

S.W.2d 176 (Tex.Crim.App.1996) (dissenting from dismissal of the petition for review). As Judge Clinton stated in *Francis:*

> Unlike an investigative detention, where the seizure may end within a brief period of time, the seizure involved in an arrest will not be brief.

922 S.W.2d at 178.

 Officer Romano arrived within three minutes of the stop and immediately began talking with appellant. Despite Officer Galligan's statements that he arrested appellant for the expired inspection sticker, appellant's arrest may be viewed as an investigative detention. A person is in "custody" only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest. *Dowthitt,* 931 S.W.2d at 254.

The trial court may have implicitly found that there was no "immediate warrantless arrest" prior to appellant's written consent to search his car. The trial court could reasonably have viewed the stop of appellant as an investigative detention, his consent to search as having been freely given, and the warrantless arrest as having been based on the cocaine found during the search. For this additional reason, the trial court did not abuse its discretion in denying appellant's motion to suppress. Appellant's second point of error is overruled.

### Appellant's Written Consent to Search Was Not Tainted

 Even assuming an immediate arrest by Officer Galligan, the trial court could have reasonably found that appellant's consent to search was not an exploitation of that arrest. Appellant only challenged the written consent to search as an exploitation of Officer Galligan's "illegal arrest"; he did not otherwise challenge the voluntariness of the consent. However, a discussion of why we find that appellant's written consent to search his car was freely and voluntarily given is helpful to our discussion of the exploitation challenge.

At Officer Romano's request, appellant signed a written consent to search that stated his permission was being freely given:

> I, David Edward Myers, having been informed of my constitutional right not to have a search made of my vehicle hereinafter mentioned without a search warrant and of my right to refuse to consent to such a search, hereby authorize R.P. Romano and Greg Haselbuler, Police Officers of the Houston Police Department, to conduct a complete search of my Vehicle (1995 Acura Legend, (Texas CIZDL)[)] located in the 1800 block of Washington Ave. These officers are authorized by me to take from my vehicle any letters, papers, materials, or other property which they may desire. This written permission is being freely given by me to the above named officers voluntarily and without threats or promises of any kind and it is given with my full and free consent. /s/ David Edward Myers

The written consent was witnessed by Officer Romano and another drug enforcement agent.

Officer Romano testified that he made no threats or promises to appellant when he asked appellant to sign the consent to search form. Officer Galligan testified that at no time did he see Officer Romano act in an aggressive manner and that he saw appellant sign the consent to search. Officer Galligan also testified that appellant was cooperative with him and Officer Romano. Officer Romano testified that appellant read the written consent form be-

fore signing it. Appellant also signed a written consent to search his residence. Appellant gave Officer Romano credible information that led to the arrest of another person for drugs within forty-five minutes after Officer Romano arrested appellant for possession of drugs, indicating that appellant was cooperative the entire time.

Consent to search operates as an exception to the Fourth Amendment's warrant requirement. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *State v. Ibarra*, 953 S.W.2d 242, 243 (Tex.Crim.App. 1997). The consent must be voluntarily given to be considered effective, and voluntariness is a question of fact to be determined from the totality of the circumstances. *Carmouche*, 10 S.W.3d at 331. The burden of proof is on the State to show by clear and convincing evidence that the consent was freely given. *Ibarra*, 953 S.W.2d at 245. The court in *Laney v. State*, 76 S.W.3d 524, 532 (Tex.App.-Houston [14th Dist.] 2002), *aff'd*, 117 S.W.3d 854 (Tex.Crim.App.2003), recited the factors to be considered in determining voluntariness:

> [W]hether the consenting person is in custody, whether he or she was arrested at gunpoint, and whether the person was informed that he or she did not have to consent. [citing *Carmouche*, 10 S.W.3d at 331] Other factors include: the youth of the accused, the education of the accused, the intelligence of the accused, the constitutional advice given to the accused, the length of the detention, the repetitiveness of the questioning, and the use of physical punishment. *Reasor v. State*, 12 S.W.3d 813, 818 (Tex.Crim. App.2000).

Even assuming that appellant was in custody when he signed the consent to search, he was not arrested at gunpoint; he was not in handcuffs; he was informed that he did not have to consent; and he was described by the confidential informant as being a forty-year-old white male. The form that he read and signed states that he was informed of his constitutional rights. The detention was brief before he signed; there was no repetitiveness of questioning by Officer Romano; and there was no use of physical punishment. Assuming there was an arrest and not an investigative detention, it was for an expired inspection sticker and not for a serious offense. There is no evidence in the record that appellant's will was overborne by the "arrest" by Officer Galligan. *See Reasor*, 12 S.W.3d at 818 (citing *Schneckloth*). Looking at the totality of the circumstances, we hold that the record supports a finding by clear and convincing evidence that appellant's consent to search was free and voluntary regardless of when Officer Galligan's "arrest" occurred.

### Assuming an Invalid Arrest Was Made, Was the Cocaine Found an Exploitation of that Arrest?

*Brick v. State*, 738 S.W.2d 676 (Tex. Crim.App.1987), sets forth the appropriate method to be utilized in deciding whether the taint of an illegal incarceration has been sufficiently purged of its initial contamination to validate the consent to search and make the discovered evidence admissible. *Boyle v. State*, 820 S.W.2d 122, 131–32 (Tex.Crim.App.1989). *Brick* requires an analysis of the factors set forth in *Brown v. Illinois*, 422 U.S. 590, 603–04, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), and the additional ones suggested by Professor LaFave in 3 W. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 8.2(d) (3d ed.1996).

The *Brown* factors are (1) the giv-

ing of *Miranda*[5] warnings; (2) the temporal proximity of the arrest and search; (3) the presence of intervening circumstances; and (4) the purpose and flagrancy of the officers' conduct. The additional LaFave factors, which partially overlap, are (5) the proximity of the consent to the arrest; (6) whether the seizure brought about police observation of the particular object which they sought consent to search; (7) whether the illegal seizure was flagrant police misconduct; (8) whether the consent was volunteered rather than requested by the detaining officers; (9) whether the arrestee was made fully aware of the fact that he could decline to consent and thus prevent an immediate search of his car or residence; and (10) whether the police purpose underlying the illegality was to obtain the consent.

 Looking at the factors set forth in *Brick*, we find that appellant's written consent to search his car was not an exploitation of the assumed illegal arrest by Officer Galligan. One of the cases considered in forming our analysis is *Juarez v. State*, 758 S.W.2d 772 (Tex.Crim. App.1988).[6] Looking at the *Brick* factors, (1) there is no evidence that appellant was read his *Miranda* rights; (2) the temporal proximity of the arrest and search was less than thirty minutes;[7] (3) the intervening circumstances consisted of Officer Romano's approach to talk with appellant and appellant's insistence on speaking privately with Officer Romano; (4) the purpose of Officer Galligan's conduct was simply to stop appellant and detain him until Officer Romano arrived; there was no flagrancy of conduct by the officers; Officer Galligan did not need a traffic violation because he could have based his stop and detention upon reasonable suspicion provided by the set-up drug buy; (5) the proximity of the consent to the arrest was within thirty minutes; (6) the stop did not bring about police observation of the particular object they sought consent to search; the stop was simply a step in the events initiated by the set up of the drug buy between the confidential informant and appellant, and the officers had been observing appellant's car since he left his apartment; (7) the arrest was not flagrant police misconduct; the police had the right to an investigative detention of appellant based on reasonable suspicion; (8) Officer Romano requested the consent, but he first confirmed information given by the confidential informant that appellant carried large sums of cash on him; (9) the written consent form made appellant fully aware of the fact that he could decline to consent and thus prevent an immediate search of his car; and (10) because an investigative detention was justified, the police had no reason to arrest appellant for an expired inspection sticker; hence, the police purpose (Officer Galligan's) underlying the illegality was not to

---

**5.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**6.** Although the statement in *Juarez,* 758 S.W.2d at 780 that "we do not consider [the *Brown* ] factors absolutely controlling in consent to search following an illegal arrest or detention cases" was rejected in *Boyle,* 820 S.W.2d at 132 n. 10 (the factors must be considered), the analysis in *Juarez* remains persuasive.

**7.** Appellant argues that this factor falls on his side of the ledger because his consent fol-

lowed "hard on the heels" of his illegal detention, citing *Howe v. State,* 874 S.W.2d 895, 902 (Tex.App.-Austin 1994, no pet.). In *Howe,* there was no reasonable suspicion for detaining the defendant. Also, the totality of the circumstances in *Howe* is not remotely similar to the totality of the circumstances here. The temporal relationship may be an ambiguous factor, and it is not a strong determining factor by itself. *See Juarez,* 758 S.W.2d at 781; *Bell v. State,* 724 S.W.2d 780, 788 (Tex.Crim.App.1986).

obtain the consent. Factors 1, 2, 5, and 8 are on the side of appellant; and factors 3, 4, 6, 7, 9, and 10 are against him. But the factors should not be considered to be of equal weight. *See Juarez,* 758 S.W.2d at 781–83. We find the factors against appellant to be much stronger than those in his favor. The illegality, if any, of Officer Galligan's arrest rests alone upon the violation of a traffic statute. This also influences our assessment of the purposefulness and flagrancy of the police conduct, especially given the fact that there was reasonable suspicion for the stop. *See Brick,* 738 S.W.2d at 681. It cannot be said that the six ounces of cocaine would not have been found but for Officer Galligan's "arrest."

█ We have discussed reasonable suspicion for the stop, but the trial court may have found that there was probable cause to stop and search appellant's car. Probable cause to search exists when the totality of the circumstances allows a conclusion that there is a fair probability of finding contraband or evidence at a particular location. *Dixon v. State,* No. PD–1592–05, 2006 WL 1408451, at *2, —— S.W.3d ——, at —— (Tex.Crim.App. May 24, 2006). As stated, Officer Romano verified the informant's information before detaining appellant and searching his car. *See, e.g., Draper v. United States,* 358 U.S. 307, 309–13, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); *Dixon,* at ——, 2006 WL 1408451.

We note that the totality of the circumstances in this case are even more favorable to the State than those in *Dixon.* *Dixon* did not involve a set-up drug buy, and there was no written consent to search. Here, Officer Romano had set up a purchase of cocaine from appellant with the confidential informant to be the buyer. After the stop, Officer Romano first confirmed that appellant carried large amounts of money just as the confidential informant had stated. After Officer Romano obtained the consent to search, the six ounces of cocaine were found in appellant's car just as the confidential informant had stated.

We hold that appellant's written consent to search his car was not an exploitation of the illegal arrest, if any, by Officer Galligan.

### This Court's Ruling

The trial court did not abuse its discretion in denying appellant's motion to dismiss. The judgment of the trial court is affirmed.