Opinion filed April 3, 2008











 
 
  
 
 







 
 
  
 
 




Opinion filed April 3,
2008

 

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                   __________

 

                                                          No. 11-06-00115-CR

                                                    __________

 

                            CLEAVE ANDREW CARAWAY, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS, Appellee

 



 

                                          On
Appeal from the 29th District Court

                                                      Palo
Pinto County, Texas

                                                   Trial
Court Cause No. 12,989

 



 

                                                                   O
P I N I O N

Cleave
Andrew Caraway appeals his conviction for the first degree felony offense of
possession of cocaine in an amount of four hundred grams or more.  See Tex. Health & Safety Code Ann. ' 481.115(f) (Vernon 2003). 
After the trial court denied appellant=s
motion to suppress evidence, appellant pleaded guilty to the offense.  Pursuant
to a plea bargain agreement, the trial court sentenced appellant to twenty-five
years confinement and a fine of $5,000.  In two appellate issues, appellant
argues that the trial court erred in denying his motion to suppress (1) because
the search of his vehicle resulted from an illegal detention and (2) because
his consent to search the vehicle resulted from a violation of his Fourth
Amendment rights.  We affirm.    








                                                        Background

On
August 31, 2005, at about 11:00 a.m., Department of Public Safety Trooper Jason
Shea made a traffic stop of appellant because he believed that appellant=s vehicle had illegal tint
on its windows.  Appellant does not challenge the legality of the reason for
the stop.  Trooper Shea was the only witness at the suppression hearing.  The
stop was videotaped by a camera in Trooper Shea=s
vehicle, and appellant introduced into evidence a copy of the video (in DVD
format).  The DVD contained audio and video of the stop.[1]

            After
stopping appellant, Trooper Shea walked to the passenger=s side of appellant=s vehicle as appellant remained seated in the
driver=s seat.  The
video showed that Trooper Shea first talked with appellant at 11:05:33. 
Trooper Shea told appellant that he wanted to check the window tint because it
looked Aa little bit
dark.@  Trooper Shea
also asked appellant for his driver=s
license and proof of insurance.  Appellant responded by saying that he was
going to a wedding.  Trooper Shea asked appellant some background questions
about the trip.  Appellant told Trooper Shea that he had come from Lubbock and
that the wedding was in Dallas.  Trooper Shea asked appellant what type of work
he did, and appellant responded that he was a barber.  Appellant gave Trooper
Shea his driver=s
license.  Trooper Shea said that appellant acted very nervous, had shaky hands,
talked very rapidly, and failed to make eye contact with him.  Trooper Shea
tested the window on the passenger=s
side of appellant=s
vehicle with a window tint meter.  The test showed that the window had tint
darker than the legal limit.  Trooper Shea then informed appellant that he was
going to write appellant a warning for the window tint, as opposed to a
citation.








Trooper
Shea requested appellant to accompany him to his police vehicle so that he
could write the warning.  The video showed that Trooper Shea and appellant got
into Trooper Shea=s
vehicle at 11:07:35.  Once Trooper Shea and appellant were inside the vehicle,
they could not be seen on the video.  However, their voices could be heard on
the audio portion.  Trooper Shea testified that appellant continued to act nervously. 
At 11:08:30, Trooper Shea initiated an outstanding warrants check and a
criminal history check on appellant by calling appellant=s driver=s
license number into DPS communications over his radio.  While Trooper Shea
waited to receive the warrant and criminal history information, Trooper Shea
and appellant talked about appellant=s
occupation as a barber.  At 11:09:45, Trooper Shea asked appellant whether he
had ever been arrested.  At about the same time, Trooper Shea began receiving
information about appellant=s
criminal history over the radio.  Appellant told Trooper Shea that he had been
arrested on conspiracy and drug charges in 1992 and that he had served four
years in prison for the charges.  

Trooper
Shea testified that he asked appellant whether he could look in the car for
anything illegal and that appellant said he could.  The video established that,
at 11:10:05, Trooper Shea asked appellant the following questions: AYou don=t have anything illegal in
the car right now?  Do you mind if I look and make sure?  Is that okay?@  The audio portion of the
video did not demonstrate whether appellant gave a Ayes@
or Ano@ response to Trooper Shea=s request for consent to
search.  Because Trooper Shea and appellant could not be seen in the video at
the time of the request for consent to search, the video did not establish
whether appellant nodded his head indicating that Trooper Shea could search the
vehicle.  However, the audio portion of the video established that, at
11:10:10, appellant stated the following: AIt=s my mom=s truck.  I don=t have nothing.@  At 11:10:15, Trooper Shea
exited his vehicle and walked to appellant=s
vehicle to search it.  Appellant also exited Trooper Shea=s vehicle and walked up
beside Trooper Shea.  The video showed that appellant actually conducted the
search of the vehicle.  Appellant showed Trooper Shea a number of items that he
had in the vehicle.  Trooper Shea testified that normally people do not walk up
to the vehicle with him while he is conducting a search.

The
video showed that, at 11:11:20, Trooper Shea and appellant got back into
Trooper Shea=s
vehicle.  Trooper Shea proceeded to write appellant a warning.  At 11:11:55,
Trooper Shea told appellant that it was a warning with no fine.  Trooper Shea
received more information about appellant=s
criminal history over the radio, and appellant told Trooper Shea that he had
gone back to prison in 1999 for a Aviolation.@  The video showed that, at
11:12:30, Trooper Shea exited the vehicle.  Appellant remained inside Trooper
Shea=s vehicle. 
Trooper Shea then searched the rest of appellant=s
vehicle.  Trooper Shea testified that he found a United Supermarket bag, which
he believed contained a substantial amount of cocaine, in the back trunk area
of appellant=s
vehicle. Trooper Shea placed appellant under arrest.








Trooper
Shea sent the substance to the Abilene DPS crime lab for analysis.  The report
from the lab indicated that the substance contained approximately 1800 grams of
cocaine.

During
cross-examination, Trooper Shea testified that appellant was not free to leave
when he asked appellant for consent to search the vehicle.  He also testified
that he would have called for a canine unit if appellant had refused consent to
search.

After
the conclusion of the evidence and arguments of counsel, the trial court denied
appellant=s motion to
suppress.  The trial court stated the following findings on the record:  Athat the evidence
contain[ed] an articulated reasonable suspicion, which developed during the
course of a valid initial detention, and that the consent given during the
course of the detention was voluntary.@
The parties did not request written findings of fact and conclusions of law,
and the trial court did not enter written findings of fact and conclusions of
law.                        

Standard
of Review

A
trial court=s denial
of a motion to suppress is reviewed for an abuse of discretion.  Balentine
v. State, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002).  In reviewing a trial
court=s ruling on a
motion to suppress, an appellate court must view the evidence in the light most
favorable to the trial court=s
ruling.   State v. Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). 
We must give great deference to the trial court=s
findings of historical facts as long as the record supports the findings.  Torres
v. State, 182 S.W.3d 899, 902 (Tex Crim. App. 2005); Guzman v. State,
955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  We also give deference to the trial
court=s rulings on
mixed questions of law and fact when those rulings turn on an evaluation of
credibility and demeanor.  Guzman, 955 S.W.2d at 89.  Where such rulings
do not turn on an evaluation of credibility and demeanor, we review the trial
court=s actions de
novo.  Id.; Davila v. State, 4 S.W.3d 844, 847-48 (Tex. App.CEastland 1999, no pet.). 
We are obligated to uphold the trial court=s
ruling if that ruling was supported by the record and was correct under any
theory of law applicable to the case, even if the trial court gave the wrong
reason for its ruling.  Armendariz v. State, 123 S.W.3d 401, 404 (Tex.
Crim. App. 2003); State v. Ross, 32 S.W.3d 853, 856 (Tex. Crim. App.
2000).

                                                                                                                           
The Detention Was Reasonable








In
his first issue, appellant contends that the purpose of the stop was completed
before Trooper Shea asked for consent to search the vehicle.  Therefore,
appellant contends that he was being illegally detained at the time Trooper
Shea requested his consent to search.  Trooper Shea stopped appellant for a
suspected window-tint violation.  A traffic stop is a detention and must be
reasonable under the United States and Texas Constitutions.  See Davis v.
State, 947 S.W.2d 240, 245 (Tex. Crim. App. 1997).  To be reasonable, a
traffic stop must be temporary and last no longer than is necessary to
effectuate the purpose of the stop.  Florida v. Royer, 460 U.S. 491, 500
(1983); Davis, 947 S.W.2d at 245.  Reasonableness is measured in
objective terms by examining the totality of the circumstances.  Ohio v.
Robinette, 519 U.S. 33, 39 (1996); Spight v. State, 76 S.W.3d 761,
765 (Tex. App.CHouston
[1st Dist.] 2002, no pet.). 

During
a traffic stop, an officer may ask questions about the driver=s destination and the
purpose of the trip.  Willis v. State, 192 S.W.3d 585, 590-91 (Tex. App.CTyler 2006, pet. ref=d); Veal v. State,
28 S.W.3d 832, 835 (Tex. App.CBeaumont
2000, pet. ref=d).  An
officer may also check for outstanding warrants and demand identification, a
valid driver=s
license, and proof of insurance from the driver.  Kothe v. State, 152
S.W.3d 54, 63 (Tex. Crim. App. 2004); Davis, 947 S.W.2d at 245 n.6; Spight,
76 S.W.3d at 766.  While an officer is awaiting a computer warrant check,
questioning about matters unrelated to the initial traffic stop does not
violate the Fourth Amendment because such questioning does not extend the
duration of an initial valid stop.  Willis, 192 S.W.3d at 591.  In some
circumstances, however, extensive questioning about unrelated matters may
exceed the scope of the initial stop.  Id.  

When
the reason for the stop has been satisfied, the stop may not be used as a Afishing expedition for
unrelated criminal activity.@ 
Davis, 947 S.W.2d at 243 (quoting Robinette, 519 U.S. at 41
(Ginsburg, J., concurring)).  Once an officer concludes the investigation of
the conduct that initiated the stop, continued detention of a person is
permitted only if there is reasonable suspicion to believe another offense has
been or is being committed.  Davis, 947 S.W.2d at 245.








The
evidence at appellant=s
suppression hearing established that Trooper Shea made a valid stop of
appellant for a suspected window-tint violation.  The video showed appellant
pulling his vehicle off the road and stopping at 11:05:06.  Trooper Shea
approached appellant=s
vehicle and first talked with appellant at 11:05:33.  Having made a valid
traffic stop of appellant, it was reasonable for Trooper Shea to ask appellant
questions about his destination and the purpose of the trip.  Willis, 192
S.W.3d at 590-91; Veal, 28 S.W.3d at 835.  It was also reasonable for
Trooper Shea to check the validity of appellant=s
driver=s license and
to check for outstanding warrants.  Davis, 947 S.W.2d at 245; Spight,
76 S.W.3d at 766.  The evidence showed that Trooper Shea initiated the warrants
check and criminal history check at 11:08:30 by calling DPS communications.  At
11:09:45, Trooper Shea began receiving information about appellant=s criminal history over his
police radio. The warrant check and criminal history check did not unreasonably
prolong the purpose of the stop.  As such, we find that it was reasonable for
Trooper Shea to request the computerized check of appellant=s criminal history.  Less
than a minute after receiving the information about appellant=s criminal history, at
11:10:05, Trooper Shea requested appellant=s
consent to search the vehicle.  At that time, Trooper Shea had not written the
warning for the window-tint violation.       

Trooper
Shea asked for appellant=s
consent to search the vehicle less than five minutes after first making contact
with appellant.  There was no evidence that Trooper Shea failed to diligently
pursue his investigation or that he delayed in writing the warning in an effort
to prolong the stop.  Based on the totality of the circumstances, Trooper Shea=s detention of appellant
was reasonable.  Therefore, Trooper Shea requested appellant=s consent to search the
vehicle during a valid detention of appellant.  

Appellant
relies on three federal Fifth Circuit Court of Appeals cases in arguing that
Trooper Shea completed the reason for the stop before requesting consent to
search and that, therefore, the detention of appellant became illegal before
Trooper Shea asked for consent to search:  United States  v. Brigham,
343 F.3d 490 (5th Cir. 2003), vacated and reh=g en banc granted by 350 F.3d 1297 (5th
Cir. 2003); United States v. Santiago, 310 F.3d 336 (5th Cir. 2002); and
United States v. Dortch, 199 F.3d 193 (5th Cir. 1999).  In Brigham,
the Fifth Circuit granted a rehearing en banc and vacated the panel opinion
cited by appellant in this cause.  See 350 F.3d 1297.  The en banc court
held that the defendant driver had not been illegally detained.  United
States v. Brigham, 382 F.3d 500, 512 (5th Cir. 2004).








In
Brigham, a DPS Trooper stopped the defendant for following too closely
behind another vehicle.  In the eight minutes following the stop, the trooper
questioned the driver and the other occupants of the vehicle.  The trooper then
initiated computer checks on the vehicle and on three identification cards that
he had received from occupants of the vehicle.  About thirteen minutes later,
the trooper requested and obtained the defendant=s
consent to search the vehicle.  Brigham, 382 F.3d at 504-05.  A majority
of a three-judge panel of the Fifth Circuit held that the trooper had unconstitutionally
extended the traffic stop by questioning the defendant before initiating the
computer checks on the vehicle and the identification cards.  The panel
majority also held that the defendant=s
consent to search was involuntary because it had been tainted by the illegal
detention.  Brigham, 343 F.3d at 505-06.

In
the en banc opinion in Brigham, the Fifth Circuit analyzed its earlier
decisions in Santiago and Dortch.  Brigham, 382 F.3d at
510.  The Fifth Circuit stated that Santiago and Dortch involved
the following sequence of events:  (1) patrol officers made initially valid
traffic stops; (2) the officers obtained negative results on computerized
checks; and (3) the officers continued to detain the drivers without reasonable
suspicion until receiving consent to search the vehicles.  Id.  The Brigham
court explained its holdings in Santiago and Dortch as follows:

The cases are about
timing and sequence: after computer checks came up Aclean,@
there remained no reasonable suspicion of wrongdoing by the vehicle occupants. 
Continued questioning thereafter unconstitutionally prolonged the
detentions.

                                                    

Id.    

In
Brigham, the en banc court concluded that the trooper had not illegally
detained the driver by questioning him before initiating the computer checks. 
The court noted that questions about Athe
purpose and itinerary of a driver=s
trip during the traffic stop@
are Awithin the scope
of investigation attendant to the traffic stop.@ 
Id. at 508.  The court also explained that officers may undertake such
questioning before initiating a computer check.  Id. at 511  (A[N]either our prior cases
nor any other caselaw of which we are aware institutes a per se rule requiring
an officer immediately to obtain the driver=s
license and registration information and initiate the relevant background
checks before asking questions.@). 
The Brigham court held that the trooper=s
investigative methods had been reasonable and that, therefore, the detention of
the defendant had not violated the Fourth Amendment.  The court also held that,
in the absence of an illegal detention, the driver=s consent to search the vehicle had not been
unconstitutionally tainted.  Id. at 511-12.








Brigham
supports the conclusion that Trooper Shea=s
actions were reasonable.  Trooper Shea  did not delay in running the computer
checks on appellant.  He initiated the checks about three minutes after he
first talked to appellant.  He began receiving information about appellant=s criminal  history over
the radio about a minute and fifteen seconds later.  In the next minute,
Trooper Shea asked appellant a few questions about his 1992 arrest and then
asked appellant for consent to search.  This case is distinguishable from Dortch
and Santiago because Trooper Shea did not engage in prolonged
questioning of appellant after receiving Aclean@ computer checks.

Trooper
Shea did not illegally detain appellant.  We overrule appellant=s first issue.

                                          Appellant=s Consent to Search Was
Voluntary

In
his second issue, appellant contends that the trial court erred in denying his
motion to suppress because his consent to search resulted from an illegal
detention. However, we have ruled above that Trooper Shea did not illegally
detain appellant.  

Consent
to search operates as an exception to the Fourth Amendment=s warrant requirement.  See
Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973); State v. Ibarra,
953 S.W.2d 242, 243 (Tex. Crim. App. 1997); Myers v. State, 203 S.W.3d
873, 886 (Tex. App.CEastland
2006, pet. ref=d). 
The consent must be voluntarily given to be considered effective, and
voluntariness is a question of fact to be determined from the totality of the
circumstances.  Carmouche v. State, 10 S.W.3d 323, 331 (Tex. Crim. App.
2000); Myers, 203 S.W.3d at 886.  To be valid, consent must Anot be coerced, by explicit
or implicit means, by implied threat or covert force.@  Carmouche, 10 S.W.3d at 331 (quoting Schneckloth,
412 U.S. at 228).  The United States Constitution requires the State to prove
voluntariness of consent by a preponderance of the evidence.  Carmouche,
10 S.W.3d at 331.  The Texas Constitution requires the State to show by clear
and convincing evidence that the consent was freely given.  Id.; Myers,
203 S.W.3d at 886.  If the record supports a finding by clear and convincing
evidence that the consent to search was freely and voluntarily given, we will
not disturb that finding. Carmouche, 10 S.W.3d at 331.








Trooper
Shea testified that appellant said he could search the vehicle.  The video
established that Trooper Shea did not threaten or coerce appellant in any way. 
Trooper Shea simply asked appellant whether appellant minded if he took a look
in appellant=s vehicle
to make sure that there was nothing illegal in it.  Although the video did not
establish that appellant affirmatively responded to Trooper Shea=s request for consent to
search, appellant=s
conduct showed that he voluntarily consented to the search.  Appellant
accompanied Trooper Shea to appellant=s
vehicle, and appellant guided and conducted the initial search of the vehicle. 
Appellant gave no indication of any objection to the search.  Looking to the
totality of the circumstances, we hold that the record supports a finding by
clear and convincing evidence that appellant=s
consent to search was freely and voluntarily given.

Even
assuming that Trooper Shea requested appellant=s
consent after the reason for the stop had been completed, the trial court did
not err in denying appellant=s
motion to suppress.  After the purpose of a traffic stop has been accomplished,
a police officer may ask for consent to search a vehicle; however, if consent
is refused, the officer may not detain the occupants or vehicle further unless
reasonable suspicion of some criminal activity exists.  Magana v. State,
177 S.W.3d 670, 673 (Tex. App.CHouston
[1st Dist.] 2005, no pet.); Spight, 76 S.W.3d at 767-68; Leach v.
State, 35 S.W.3d 232, 235-36 (Tex. App.CAustin
2000, no pet.); Simpson v. State, 29 S.W.3d 324, 328 (Tex. App.CHouston [14th Dist.] 2000,
pet. ref=d); see
Robinette, 519 U.S. at 39-40.  Thus, an officer may ask for consent to
search a vehicle even though the officer does not have reasonable suspicion
that some criminal activity exists.  Leach, 35 S.W.3d at 236.  An
officer requesting consent to search may not convey, by words or deed, that
compliance is required.  Saldivar v. State, 209 S.W.3d 275,  282-83
(Tex. App.CFort Worth
2006, no pet.); Leach, 35 S.W.3d at 235-36.

Trooper
Shea did nothing to convey that compliance with his request for consent to
search was required.  Although Trooper Shea testified that appellant was not
free to leave and that he would have called a canine unit if appellant had
refused consent, Trooper Shea did not convey these facts to appellant.  Trooper
Shea merely asked appellant whether appellant minded if he took a look in the
vehicle.  Therefore, even if the reason for the traffic stop had been
completed, the trial court would not have erred in concluding that appellant
freely and voluntarily consented to the search.








Appellant
asserts that, even if he consented to the search, Athe scope of the search was restricted to the
areas and articles that were searched by [a]ppellant during the first search,
as these were the only areas of the vehicle that [a]ppellant impliedly wished
for [Trooper] Shea to see.@ 
The standard for measuring the scope of a suspect=s
consent under the Fourth Amendment is that of Aobjective@ reasonableness B what the typical
reasonable person would have understood by the exchange between the officer and
the suspect.  Simpson, 29 S.W.3d at 330; see Florida v. Jimeno,
500 U.S. 248, 250-51 (1991).  Trooper Shea asked appellant whether he could
look in the vehicle for anything illegal.  Trooper Shea found the cocaine in
what he called the back trunk area of appellant=s
vehicle.  The video established that appellant had shown Trooper Shea articles
in that area when appellant conducted the first search of the vehicle.  A
reasonable person would have understood appellant=s
consent to search to include that area of the vehicle.  Trooper Shea=s search of the vehicle did
not exceed the scope of appellant=s
consent.  We overrule appellant=s
second issue.

This
Court=s Ruling

We affirm the
judgment of the trial court.                       

 

 

TERRY McCALL

JUSTICE

 

April 3, 2008

Publish.  See Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J., 

McCall, J., and Strange, J.









[1]The video showed that Trooper Shea stopped appellant at
about 23:05.  However, the evidence established that the stop occurred around
11:05 a.m. instead of 11:05 p.m.