In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-04-507 CR


____________________



JUSTIN AMADOR, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the County Court at Law No. 1


Montgomery County, Texas


Trial Cause No. 03-186535






OPINION


 Department of Public Safety (DPS) Trooper Angela Fountain stopped Justin Amador
for speeding. After an investigation, Trooper Fountain arrested Amador for driving while
intoxicated (DWI). Amador asked the trial court to suppress evidence that he asserts Trooper
Fountain gained without sufficient probable cause to believe he was engaged in criminal
activity. The trial court denied Amador's motion to suppress. 

 After the trial court refused to suppress the evidence, Amador pled guilty to a
misdemeanor DWI charge pursuant to a plea agreement. See Tex. Pen. Code Ann. §
49.04(b) (Vernon 2003). The trial court sentenced Amador to 180 days in the county jail,
suspended the sentence, and placed Amador on community supervision for one year. 
Amador appeals from his conviction and argues the trial court erroneously denied his motion
to suppress. Finding that Amador shows no error, we affirm his conviction.

BACKGROUND

 Trooper Fountain stopped Amador for speeding early in the morning of June 3, 2003. 
She initially saw Amador's car on the feeder road to I-45, and then saw him enter the
highway. After traveling a short distance, Amador took the first exit. Trooper Fountain
followed Amador approximately a quarter of a mile before turning on her flasher. Amador
pulled off the highway into a parking lot. He concedes that the trooper properly stopped him
for speeding. However, Amador contends that Trooper Fountain's stop lasted longer than
necessary to achieve its purpose, and that the State failed at the suppression hearing to prove
probable cause for his DWI arrest. 

 At the suppression hearing, Trooper Fountain discussed her interaction with Amador
immediately following the traffic stop. She described Amador's speech during their initial
conversation as "very low and mumbled." After Trooper Fountain asked for Amador's
license and insurance, she noticed that he was slow to respond to this request and "fumbled
through and passed over his driver's license on more than one occasion." Although Trooper
Fountain noted Amador's speech was "mumbled," she also testified that Amador did not slur
his speech. 

 Trooper Fountain then returned to her patrol car, checked to see if Amador had 
outstanding warrants, and learned there were none. Upon returning to Amador's car, Trooper
Fountain asked Amador to step out of his car. At that point, Trooper Fountain noticed that
Amador exited more slowly than normal, but he did not stumble, stagger, or lean on his car
for support. While giving Amador a warning for speeding, Trooper Fountain smelled alcohol
on his breath. 

 She testified that based on Amador's mumbled speech, his slowness in getting his
license, and the smell of alcohol on his breath, she decided to do standardized field sobriety
tests. Because of Amador's performance on the horizontal-gaze-nystagmus, the walk-and-turn, and the one-leg-stand, Trooper Fountain arrested Amador for driving while intoxicated. 
Trooper Fountain did not further explain how Amador failed to pass his field sobriety tests
or explain the clues on the field sobriety testing that caused her to arrest Amador for DWI. 

 The parties called no other witnesses. However, during Trooper Fountain's testimony,
Amador's attorney played a videotape made by Trooper Fountain during the traffic stop. 
Before Amador's attorney showed Trooper Fountain the tape, the court asked:

THE COURT: . . . Mr. Trichter, do you wish to have a record
of this or will the tape suffice?

[Defense counsel]: The tape will suffice itself, your Honor.

THE COURT: Thank you. So you waive that. I assume the
State is in agreement with that?

[Prosecutor]: Yes, Your Honor. 

 Amador's attorney played at least part of the videotape during his examination of
Trooper Fountain. Amador's attorney did not mark the videotape, and did not introduce it
into evidence at the hearing. It is clear from the record that all of those present could see the
videotape. Although we cannot determine whether Amador's attorney played the entire
videotape in court, Amador's attorney clearly published a substantial part of the tape,
including the part containing the one-leg-stand, during his presentation of evidence. 

 Amador did not include the videotape in the appellate record. After the clerk filed
the record on appeal, the State filed a motion seeking to supplement the record with 
the videotape. Amador's attorney objected to the State's request and argued that
supplementation would be improper. Because Amador did not agree to the State's request,
and because we could not determine whether Amador's attorney showed the entire videotape
in court, we denied the State's Motion. 


STANDARD OF REVIEW

 This Court reviews a trial court's ruling on a motion to suppress for an abuse of
discretion. Dyar v. State, 125 S.W.3d 460, 462 (Tex. Crim. App. 2003). We give almost
total deference to the trial court's determination of historical facts, while conducting
a de novo review of the trial court's application of the law to those facts. State v. Ross, 32
S.W.3d 853, 856 (Tex. Crim. App. 2000). When, as here, the trial court does not file
findings of fact and conclusions of law, "we view the evidence in the light most favorable
to the trial court's ruling and assume that the trial court made implicit findings of fact that
support its ruling as long as those findings are supported by the record." Id. at 855. As the
sole trier of fact at the suppression hearing, the trial judge "evaluates witness testimony and
credibility." Torres v. State, No. PD-1322-04, 2005 WL 3310462, *2 (Tex. Crim. App. Dec.
7, 2005) (citing Maxwell v. State, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002)).

 When the defendant shows that the search occurred without a warrant, "the burden
shifts to the state to prove the reasonableness of the warrantless search." Id. Whether
probable cause to arrest is then sufficient depends upon the "totality of the circumstances." 
Id. (citing Amores v. State, 816 S.W.2d 407, 413 (Tex. Crim. App. 1991)). "[P]robable cause
must be based on facts, not opinions." Id. at *3; see also Ford v. State, 158 S.W.3d 488, 493-94 (Tex. Crim. App. 2005).


APPLICATION OF LAW TO FACTS

A. Scope of Detention

 In issue one, Amador argues that the scope of his detention exceeded the justification
for his initial stop. Amador argues that once Trooper Fountain issued a warning for
speeding, she had no reason to expand her investigation into whether he was driving while
intoxicated. 

 Amador, however, ignores several facts. Trooper Fountain noted his difficulty in
complying promptly to her ordinary requests for license and insurance information and his 
unusually slow movement when exiting his vehicle. Also, Amador asserts that Trooper
Fountain smelled the signs of an alcoholic beverage on Amador's breath after she issued the
warning, but we understand Trooper Fountain's testimony to mean that she smelled the
alcohol on him before he signed the warning. 

 The cases upon which Amador relies are distinguishable. Amador cites Davis v. State,
947 S.W.2d 240 (Tex. Crim. App. 1997) for the proposition that articulable facts must
support a continued detention. We believe the detainment in Davis is factually
distinguishable and much more prolonged than Amador's detention here. We also find that
Trooper Fountain articulated facts supporting Amador's detention for field sobriety testing. 
In Davis, the police stopped a driver for suspicion of driving while intoxicated; however, 
they did not smell alcohol on the driver and admitted that they ruled out DWI early in their
investigation. Id. at 241. Nevertheless, after the officers' investigation revealed nothing to
support DWI, which was the purpose of their stop, they continued their investigation,
interrogated the driver and his passenger separately, performed background checks on both
the driver and his passenger, did a pat-down search of the driver, and held the car at the scene
so a dog could sniff it for the presence of narcotics. Id. When the dog arrived, the dog
alerted on the car's trunk, and at that point the driver consented to the search of his trunk. 
Id. The police found a suitcase containing marihuana during their search of the car's trunk. 
Id. The Court of Criminal Appeals held the prolonged detention under these circumstances 
unreasonable because the negative results of the investigation did not justify it. Id. at 246.

 Here, facts justified further investigation into Amador's sobriety, and comparable
delays do not exist. Trooper Fountain conducted the field sobriety tests on Amador
immediately after smelling alcohol on his breath. Trooper Fountain's detection of alcohol
on Amador's breath, her prior observation of Amador's mumbled speech, and her impression
of his slowness in exiting his vehicle all arose as a product of the speeding stop. Unlike
Davis, the products of Trooper Fountain's investigation were not the result of a prolonged
stop. Also, unlike the extension of the Davis search, the extension of the investigation here
reasonably resulted from facts Trooper Fountain observed after she stopped Amador for
speeding.

 Amador also relies on State v. Daly, 35 S.W.3d 237 (Tex. App.- Austin 2000, no pet.)
for the proposition that "the existence of reasonable suspicion must precede a
detention . . . ." Id. at 241. Daly is also distinguishable from this case. In Daly, the traffic-stop investigation did not result in information justifying the officer's subsequent drug-possession investigation. Id. at 239-40. During the traffic stop here, Trooper Fountain
obtained information that supported her suspicion that Amador was driving while
intoxicated. Another important distinction is that in Daly, the trial judge granted the motion
to suppress, and here the trial judge denied the motion to suppress. Id. at 239. Thus, the
presumptions on resolution of fact issues favored the defendant in Daly, but favor the State
in the present case.

 Although the police cannot unduly prolong an investigation for a traffic violation, it
is also settled that an officer may make an arrest for other offenses discovered during the
investigation. Taylor v. State, 421 S.W.2d 403, 407 (Tex. Crim. App. 1967); Perales v.
State, 117 S.W.3d 434, 439 (Tex. App.- Corpus Christi 2003, pet. ref'd). After reviewing
the record of the suppression hearing, we find the State demonstrated facts upon which the
trial judge could reasonably conclude that Trooper Fountain's detention of Amador for field
sobriety tests was reasonable. We overrule issue number one. 



B. Probable Cause - Waiver

 In issue two, Amador asserts the State failed to meet its burden to show probable
cause justifying his arrest. The State initially responds to Amador's issue by asserting that
Amador did not challenge the State's evidence of probable cause during the motion to
suppress hearing. 

 In evaluating this issue, we note that by written motion Amador questioned whether
probable cause supported his arrest. In his motion to suppress, Amador stated that his
"seizure . . . was made without any reasonable suspicion that he was engaged in criminal
activity." Also, before trial, Amador filed a motion requesting the trial court to reconsider
its ruling denying his motion to suppress. In the motion for rehearing, Amador argued, "the
State clearly failed to establish probable cause to arrest [Amador] for the offense of DWI
based on the totality of the circumstances." Thus, Amador filed two pre-trial motions 
arguing that the State did not have probable cause to support his arrest.

 Rule 33.1(a) of the Texas Rules of Appellate Procedure contains the prerequisites for
preserving error for appeal. That rule requires the appellant assert his complaint in the trial
court by a timely request, objection, or motion. See Tex. R. App. P. 33.1(a). Here, Amador
made his request challenging the State's evidence of probable cause by motion. The State
goes on to argue that Amador waived his probable cause argument by failing affirmatively
to argue the issue of probable cause at the hearing on his motion to suppress or during the
hearing of his motion for rehearing. The State cites no authority for the proposition that the
Rules of Appellate Procedure require both a written motion and argument at an oral hearing
to perfect error. In reviewing defense counsel's argument to the trial court during the hearing
on Amador's motion to suppress, we also find Amador's attorney stated, "The burden of
proving probable cause lies with the Government." Thus, even if we accepted the State's
argument, which we do not, the record does not support its position.

 In summary, the Rules of Appellate Procedure allow an appellant to perfect an issue
for appellate review by a timely request, an objection, or a motion. Amador filed a timely
written motion attacking the existence of probable cause supporting his arrest and obtained
a hearing on the motion. We reject the State's contention that Amador waived his right to
our review of the issue.

C. Probable Cause - The Missing Videotape

 The State also argues that the videotape provides sufficient evidence of probable cause
supporting Amador's arrest for driving while intoxicated. The State argues that it did not
need Trooper Fountain to explain how Amador failed the field sobriety tests because "his
performance plainly shows he was physically and mentally impaired." 

 We examine the reasonableness of Amador's arrest, and specifically the existence of
probable cause, considering all the circumstances. See Terry v. Ohio, 392 U.S. 1, 21, 88
S.Ct. 1868, 20 L.Ed.2d 889 (1968); Hulit v. State, 982 S.W.2d 431, 435-36 (Tex. Crim. App.
1998). Probable cause exists when the facts and circumstances of which an officer has
personal knowledge or of which he has reasonably trustworthy information are sufficient to
warrant a person of reasonable caution in the belief that, more likely than not, a particular
suspect has committed or is committing an offense. See Torres, 2005 WL 3310462, at *2. 

 A videotape of field sobriety tests depicting Amador's impairment is relevant to the
issue of intoxication. See Miffleton v. State, 777 S.W.2d 76, 80 (Tex. Crim. App. 1989)
(video portions of videotape compelling a DWI suspect to perform sobriety tests were
admissible). In this case, Amador's attorney introduced the videotape; so no one questions
whether portions of the tape's audio or video depict custodial interrogations. Evidence
introduced in a DWI trial is not necessarily limited to oral testimony, but in appropriate cases
may include relevant photographs or videotapes. See Tex. R. Evid. 401, 1001; Griffith v.
State, 55 S.W.3d 598, 601 (Tex. Crim. App. 2001) (audio portions of videotape
circumstantially relevant because any signs of impairment in speech are relevant to definition
of intoxication); Jones v. State, 795 S.W.2d 171, 175-76 (Tex. Crim. App. 1990) (audio
portions of videotape may be admitted where questioning did not call for testimonial
responses); Miffleton, 777 S.W.2d at 80; Smith v. State, 105 S.W.3d 203, 207 (Tex. App. -
Houston [14th Dist.] 2003, pet ref'd) (audio portions of video are relevant to issue of
intoxication because the impairment in one's ability to speak is relevant to whether one was
driving while intoxicated).

 Generally, appellate courts afford almost total deference to a trial court's
determination of the historical facts supported by the record. Guzman v. State, 955 S.W.2d
85, 89 (Tex. Crim. App. 1997). Here, whether Amador's loss of his mental and physical
faculties was sufficient to justify his arrest revolves largely around his performance on the
field sobriety tests. Because the videotape is not in the appellate record, a complete review
of the trial court's ruling is impossible. 

 When the record is incomplete and the defendant challenges the sufficiency of
evidence, he is responsible for ensuring that the entire record before the trial court is also
before the court on his appeal. O'Neal v. State, 826 S.W.2d 172, 173 (Tex. Crim. App.
1992). In Guajardo v. State, 109 S.W.3d 456 (Tex. Crim. App. 2003), the Court of Criminal
Appeals addressed some problems created by an appellant's failure to present a sufficient
record for appellate review. The Guajardo Court declined to reverse a trial court's ruling in
a suppression hearing when the record on appeal did not contain a transcript necessary for
appellate review. Id. at 462. In a footnote, the Court of Criminal Appeals stated, "[i]t is,
however, the appealing party's burden to ensure that the record on appeal is sufficient to
resolve the issue he presents." Id. at n.17. 

 The issue Amador presents is whether the trial court erred in finding sufficient
evidence of probable cause to support his arrest. Here, Amador's attorney introduced the
videotape, suffered the adverse ruling on his motion to suppress, and presented an incomplete
record on appeal. Under these circumstances, we hold the Guajardo rule applies. Amador
fails to meet his burden "to ensure that the record on appeal is sufficient to resolve the issue
he presents." The Fourteenth Court of Appeals reached a similar conclusion in Ortiz v. State,
144 S.W.3d 225, 230 (Tex. App. - Houston [14th Dist.] 2004, pet. ref'd), and placed the
burden on the party appealing "to develop the record to show the nature and source of an
error and, in some cases, its prejudice to him." 

 As previously noted, the trial court did not file findings of fact. As a result, we review
the evidence in the light most favorable to the trial court's ruling and assume the trial court's
inferred findings are based on evidence supporting its ruling. Ross, 32 S.W.3d at 855. 
Therefore, we assume the videotape of the stop shown in court supports the trial court's
inference of reasonable suspicion sufficient to support Amador's arrest. Because the trial
court reviewed the videotape, a detailed description of Amador's performance during the stop
is unnecessarily cumulative. "The taped depictions provide nothing more than what the
police officers saw and could have testified to at trial." Miffleton, 777 S.W.2d at 80. We
overrule issue two. 

 We conclude that depending upon the driver's impairment depicted therein, a
videotape of a driver's performance on field sobriety tests can be sufficient evidence to
support probable cause to proceed with an arrest for DWI. As noted in a Chinese proverb,
"One picture is worth more than ten thousand words." 15 John Bartlett, Familiar
Quotations 132 (Little, Brown & Co. 1980). Accordingly, we affirm the trial court's
ruling. (1)

 AFFIRMED.



 ____________________________

 HOLLIS HORTON

 Justice

 


Submitted on December 22, 2005

Opinion Delivered March 15, 2006 

Publish


Before McKeithen, C.J., Kreger and Horton, JJ.

1. Amador's attorney is responsible for playing the videotape in court. He stated in open
court that no record was necessary regarding the demonstration and the videotape would suffice, 
but later objected to the State's effort to put the tape before us. Under the doctrine of invited
error, an accused cannot invite error and complain the court ruled in accordance with his request. 
Capistran v. State, 759 S.W.2d 121, 124 (Tex. Crim. App. 1982). If we erred in denying the
State's motion to supplement the record, we did so at Amador's request.