IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-0786-06






JUSTIN AMADOR, Appellant



v.



THE STATE OF TEXAS






ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE NINTH COURT OF APPEALS


MONTGOMERY COUNTY





 Cochran, J., delivered the opinion of the Court, in which Price, Womack,
Johnson and Holcomb, JJ., joined. Hervey, J., filed a dissenting opinion, in which
Keller, P.J., and Keasler, J., joined. Meyers, J., not participating.


O P I N I O N 



 Appellant was charged with DWI. He filed a motion to suppress evidence. The trial
judge conducted a live hearing on appellant's motion during which he viewed portions of
the arresting officer's patrol-car videotape. At some point, the court apparently denied the
motion and later denied appellant's motion for reconsideration. Appellant then pled guilty,
but appealed the trial court's ruling on his pretrial motion. The court of appeals affirmed the
trial court's ruling. (1) It held, in part, that appellant failed to present a complete record on
appeal because he successfully objected to the supplementation of the record with the
videotape that had not been formally admitted into evidence. Therefore, the court of appeals
"assume[d] the videotape of the stop shown in court supports the trial court's inference of
reasonable suspicion sufficient to support [appellant's] arrest." (2)

 We granted appellant's petition for discretionary review to consider whether the court
of appeals erred in "assuming" that the missing videotape supported the trial court's ruling. (3) 
We agree with appellant that a reviewing court cannot speculate about the contents of
exhibits that are not contained in the appellate record. Because the trial judge is in the best
position to resolve the parties' dispute concerning what portions of the videotape he actually
saw and used in making his ruling, we vacate the judgment of the court of appeals and
remand the case to that court for further proceedings.


I.


 After appellant was charged with DWI, he filed several motions to suppress evidence. 
One of those motions claimed that he was seized "without any reasonable suspicion that he
was engaged in criminal activity" and that "[t]he acquisition of the evidence which the
Government will offer in this cause was not pursuant to search warrant, was absent exigent
circumstances, and made without probable cause to believe the Defendant was engaged in
criminal activity or that such evidence, if any, was in danger of being destroyed." 

 The trial court held a hearing on this motion to suppress. Appellant called DPS
Trooper Alicia Fountain, the arresting officer, and played portions of her patrol-car videotape
to challenge his "prolonged" detention. Appellant did not have the videotape marked, and
he told the trial judge that it was not necessary to have a reporter's record of the words
spoken on the videotape because "[t]he tape will suffice itself, Your Honor." Although
portions of the tape were played, the videotape was never formally offered into evidence. Trooper Fountain's testimony during the hearing showed that she was "working radar"
on I-45 in Montgomery County at 2:30 a.m. on June 3, 2003. She saw appellant speed onto
the freeway and followed him to the next exit, where he turned off. She turned on her
emergency lights, and appellant pulled over in a parking lot. Besides speeding, the trooper
saw no other traffic violation or indications of "bad driving." 

 Trooper Fountain did not, at that time, think she had stopped an intoxicated person. 
But when she approached appellant and asked for his driver's license and insurance, "[h]e
was extremely slow to respond." He fumbled through his wallet, passing by his license, and
was slow to provide both his license and insurance. When she asked appellant to get out
of his car, he was slower than normal in doing so, and "his speech was mumbled, real under
his breath and mumbled." She wrote up a warning ticket for speeding and was ready to
deliver it to him when she smelled alcohol on his breath. At that point, she had a suspicion
that he might be intoxicated. In response to the prosecutor's questions, Trooper Fountain
stated that, based on that information, "I felt I needed to investigate further by performing
standardized field sobriety tests."

Q: And did you perform those tests?

A: Yes, ma'am, I did.

Q: What tests did you have him do?

A: Did the horizontal gaze nystagmus, the walk and turn, and the one-leg stand.

Q: And on the basis of all of those tests and how the defendant performed, what did you
decide to do?


A: I placed him under arrest for driving while intoxicated. 

The focus of appellant's questioning on direct examination and of the State's questioning on
cross-examination was Trooper Fountain's continued detention of appellant after she wrote
a warning ticket for speeding.

 In his closing argument at the hearing, appellant mentioned, for the first time, the issue
of probable cause to arrest. He stated that, assuming arguendo that there was articulable
suspicion to detain appellant for further investigation, the State

 failed to show you other and conclusory terms that he failed field sobriety
tests. They are undescribed field sobriety tests. How he did on those tests was
not described to you. It wasn't my burden. It's their burden. All you heard
was that he did-she did an HGN, a walk and turn test and a one-leg stand test. 
You never even heard he failed them. I know you didn't hear why he failed
them. . . . I believe the El Paso Court of Appeals decided this exact case and
they found that when field sobriety tests are referenced but they are not
described and the State fails in their burden to show probable cause. 


The trial judge took the matter under consideration and apparently denied appellant's motion
at some later time. It is unclear exactly when the trial court ruled and what he ruled upon-the
motion to suppress generally, the issue of articulable suspicion to detain, or both articulable
suspicion to detain and probable cause to arrest. (4)

 Some months later, appellant filed a motion to reconsider, and, in presenting that
motion to the trial judge, noted that "the main issue focuses on was the trooper justified in
continuing the investigation after she had issued a warning citation." He stated that the
videotape showed that "there is no mumbled speech on the tape. There is no slow reaction. 
So no matter what the officer said she observed or heard, it just wasn't there." Thus,
according to the defense, "Once the citation was given, the warning citation was given, she
had no legal right to further detain him." The State then argued that the trooper 

 said he was slow to respond, seemed to be fumbling for his license and I think
that coupled with what she perceived that evening with slurred speech. Now,
did we hear it on the video? I can't recall if we did or not, but the quality of
the video is not as good as her ears right there that night when she said she
perceived fumbling with the license, slurred speech. She said when she was
handing them to him, she smelled alcohol. Those three things do justify her
detention of him and are reasonable under the circumstances that existed that
night, the totality of the circumstances.


Appellant responded that "there are only two items prior to her continuing the investigation. 
That would be mumbled speech, which the Court is not bound to accept because the Court
heard the audio portion. I brought it if you wanted to re-listen to it, just the portion we're
talking about, like a three-minute section. Slowness to react, I don't see it there either."

 The trial court concluded: "I understand and I don't think it's strong, but I think there
was enough there to justify it. . . . I think your arguments will be or will be well received by
a jury when you look at all of it, but I still think there was enough to get her to that point." 
 Immediately thereafter, appellant pled guilty, and the trial court sentenced him to 180
days in jail probated for a year and a fine of $600. 

 Appellant raised two issues on appeal. He claimed that the trial court erred in denying
his motion to suppress because (1) Trooper Fountain lacked articulable suspicion to detain
him after she decided to give him a warning ticket, and (2) the State had failed to show that
she had probable cause to arrest appellant for DWI. Appellant did not designate the
videotape to be included in the appellate record. The State therefore requested that it be
permitted to supplement the appellate record with a copy of Trooper Fountain's scene
videotape which showed appellant performing the field sobriety tests. Appellant objected,
arguing that the videotape had never been marked as an exhibit or formally introduced into
evidence in the trial court. The court of appeals stated that because appellant "did not agree
to the State's request, and because [it] could not determine whether [appellant's] attorney
showed the entire videotape in court," it denied the State's request. (5)

 On the issue of Trooper Fountain's articulable suspicion, the court of appeals held that
the facts that Trooper Fountain had before her "justified further investigation" into
appellant's sobriety. (6) Those facts included: (1) appellant's "difficulty in complying
promptly to her ordinary requests for license and insurance information"; (2) "his unusually
slow movement" getting out of his car; (3) his "mumbled speech"; and (4) the smell of
alcohol on his breath before he signed the warning ticket. (7) 

 Concerning the issue of probable cause, the court of appeals noted that the State
initially responded in its appellate brief by asserting that appellant "did not challenge the
State's evidence of probable cause during the motion to suppress hearing." (8) The court of
appeals rejected the State's contention that appellant forfeited his right to complain about the
issue of probable cause on appeal because he had failed to litigate it in the trial court. (9) The
State also argued that the videotape provided sufficient evidence of probable cause to support
appellant's arrest for DWI. (10) The court of appeals stated that "[b]ecause the videotape is not
in the appellate record, a complete review of the trial court's ruling is impossible." (11) 
However, it also concluded that, because appellant had "introduced the videotape, suffered
the adverse ruling on his motion to suppress, and presented an incomplete record on appeal,"
he had failed to ensure that "'the record on appeal [was] sufficient to resolve the issue he
present[ed].'" (12) Therefore, the court of appeals assumed that the videotape supported the
trial court's implicit finding that Trooper Fountain had probable cause to arrest appellant for
DWI. (13)

II.


 The defendant in a criminal proceeding who alleges a Fourth Amendment violation
bears the burden of producing some evidence that rebuts the presumption of proper police
conduct. (14) "A defendant meets his initial burden of proof by establishing that a search or
seizure occurred without a warrant." (15) The burden then shifts to the State to prove that the
search or seizure was nonetheless reasonable under the totality of the circumstances. (16)

 In reviewing a trial court's ruling on a motion to suppress evidence and its
determination of the reasonableness of either a temporary investigative detention or an arrest,
appellate courts use a bifurcated standard of review. (17) They must give "almost total
deference to a trial court's determination of the historical facts that the record supports
especially when the trial court's fact findings are based on an evaluation of credibility and
demeanor." (18) This "deferential standard of review in Guzman also applies to a trial court's
determination of historical facts when that determination is based on a videotape recording
admitted into evidence at a suppression hearing." (19) Appellate courts also afford the same
level of deference to a trial court's ruling on "application of law to fact questions," or "mixed
questions of law and fact," if the resolution of those questions turns on an evaluation of
credibility and demeanor. (20) The appellate courts review de novo "mixed questions of law and
fact" that do not depend upon credibility and demeanor. (21)

 When the trial court does not make explicit findings of fact in ruling on a motion to
suppress evidence, appellate courts "review the evidence in a light most favorable to the trial
court's ruling and assume that the trial court made implicit findings of fact supported by the
record." (22) But reviewing courts can assess only the evidence that is actually in the appellate
record. (23) If the appellate record is incomplete or anything relevant is omitted from it, any
party may "direct the official court reporter to prepare, certify, and file in the appellate court
a supplemental reporter's record containing the omitted items." (24) 

 Sometimes the parties may treat an exhibit, document, or other material as if those
items had been admitted into evidence, even though they were never formally offered or
admitted in the trial court. For example, in Harden v. State, (25) this Court noted that a
photograph of a burned trailer shown to the jury in an arson trial was the only evidence that
would support a finding that the trailer was a "house." (26) We noted,

 In [the] absence of a timely objection, the display of the photograph
before the jury and the elicitation of testimony concerning its features was
tantamount to the introduction of the photograph and it could be properly
considered as part of the evidence. (27)


Even though the photograph was never "formally offered and introduced into evidence nor
brought forward in the record[,]" (28) we requested that the photograph be forwarded to this
Court. We then used that photograph, which had never been offered or admitted into
evidence and had not been included in the original record on appeal, in assessing the
sufficiency of the evidence to prove that the burned trailer was, in fact, a house. (29) Professor
Dix notes that, after Harden, 

 Texas courts have held that documents or items in some way made part of the
trial record which are treated by the court and parties as if formally introduced
into evidence are properly considered by the judge and jury on the merits of
the case. Thus, they are properly included in the appellate record and
considered by the appellate court. (30)


But if the court reporter's record is unclear and the parties cannot agree as to whether and to
what extent they, the trial court, or the jury saw or used an item that was not formally
introduced into evidence, "the trial court must-after notice and a hearing-settle the
dispute." (31) 

 With those general legal propositions in mind, we turn to the present case.

III.


 Here, appellant argues that the court of appeals erred by "assuming" that (1) Trooper
Fountain's videotape recorded appellant's performance of the field sobriety tests, (2) the trial
judge viewed all of that portion of the videotape, and (3) the video depiction of those tests 
supported Trooper Fountain's opinion that appellant was intoxicated at the time she arrested
him. Appellant is correct. 

 Reviewing courts must defer not only to all implicit factual findings that the record
will support in favor of a trial court's ruling, (32) "but also to the drawing of reasonable
inferences from the facts." (33) But reviewing courts cannot "assume" or speculate about the
contents of exhibits or other materials that are not contained in the appellate record. (34) 

 In the present case, (35) the court of appeals relied upon Guajardo v. State, (36) for the
proposition that it is "the appealing party's burden to ensure that the record on appeal is
sufficient to resolve the issue he presents." (37) Appellant argues that Guajardo does not apply
here because he did not have the burden of proof in the trial court to establish probable cause. 
He argues: "It was the State's burden to offer a sufficient record to the trial court to sustain
its burden of proof. Its failure to do so cannot result in a presumption that the evidence it did
not make part of the record in the trial court supported the trial court's decision." (38)

 Indeed it was the State's burden to establish, in the trial court, the existence of
articulable suspicion to detain appellant once Trooper Fountain wrote him a warning ticket
and to establish probable cause to arrest appellant if that issue was disputed. It was,
however, appellant's burden to bring forward a record on appeal sufficient to show that the
trial court erred in his ruling on the motion to suppress. (39) Appellant claims that he does not
rely upon the existence or content of the videotape in his appeal. (40) From his viewpoint, the
record on appeal is sufficient to resolve the issue he presents without the videotape. He does
not need it, and he does not want it. Because he does not rely upon its contents, he was not
required to designate that videotape for inclusion in the appellate record. (41) 

 Conversely, the State did want the videotape in the appellate record. It quite properly
tried to supplement the record with the videotape. (42) Appellant, again quite properly, objected
to its inclusion because he claimed that the trial judge did not view its entirety and thus the
appellate court might consider portions of the videotape that were not actually viewed by the
trial judge and not considered when he made his ruling. (43) The court of appeals properly
denied the State's written request for supplementation because appellant objected to its
inclusion and the parties could not agree on how much of the videotape was actually viewed
and used in the trial court. But the court of appeals was mistaken to leave this disagreement
unresolved.

 The court of appeals was faced with a dilemma: the trial judge obviously viewed
portions of the videotape and appellant relied upon some portions of the tape in the trial
court, but appellant objected to supplementation of the record because the trial court may not
have viewed the entire tape. It would be improper to ignore evidence that the trial judge did
consider, but it would be equally improper to consider evidence that the trial judge did not
consider.

 The solution to this dilemma is set out in Rule 34.6(d) and (e) of the Texas Rules of
Appellate Procedure. (44) 

 As we stated in Whitehead v. State, (45) "the record may be supplemented under the
appellate rules if something has been omitted, [but] the supplementation rules cannot be used
to create new evidence." (46) Of course, an appellate court's review of the record is generally
limited to the evidence that was before the trial court at the time of the trial court's ruling. (47) 
And that is precisely the purpose of Rule 34.6. It ensures that the record on appeal accurately
reflects all of the evidence that was seen by, used by, or considered by the trial judge at the
time he made a ruling. (48) If the record as originally designated by the parties does not fully
reflect the evidence considered by the factfinder, then the trial judge, the court of appeals,
or any of the parties may direct the court reporter to supplement the appellate record with the
missing items. (49) If the parties have a dispute over what items are missing from the appellate
record, or they dispute the accuracy or completeness of those items, the trial court will
resolve that dispute. (50)

 In the present case, the State requested supplementation of the record. Thus, when
a dispute arose over what and precisely how much the record should be supplemented, the
court of appeals was mistaken to deny that request without also ordering the trial court to
resolve the dispute. It was further mistaken in "assuming" that the portions of the videotape
that the trial court viewed and used in ruling on appellant's motion to suppress were
necessarily unfavorable to his position.

 Because the court of appeals based its decision, at least in part, upon the contents of
an exhibit that was not in the appellate record, it erred. Therefore, we sustain appellant's first
ground for review. But because the State had properly requested supplementation of the
record with that missing exhibit, we vacate the judgment of the court of appeals and remand
this case to that court for further proceedings consistent with this opinion.


Delivered: April 25, 2007

Publish 
1. Amador v. State, 187 S.W.3d 543 (Tex. App.-Beaumont 2006).
2. Id. at 549.
3. We granted both of appellant's grounds for review:

1) In resolving the claim that there was not probable cause to arrest, the court of appeals
erred in considering the videotape that was not admitted into evidence in the trial court
and that was not part of the appellate record.

2) The court of appeals erred in holding that the trial record was sufficient to establish
probable cause to arrest when the evidence consisted only of the conclusory statement
that appellant "failed field sobriety tests."

Because we agree with appellant on his first ground for review and remand this case to the court
of appeals for further proceedings on that ground, we dismiss appellant's second ground for
review.
4. It is extremely difficult to determine from this record whether the trial judge was
actually asked to resolve the question of probable cause and whether he made a ruling on that
issue. Appellant stated in his Brief to the court of appeals that he "expects that there will be a
supplemental Clerk's record filed that contains the trial court's order denying the motion to
suppress." Such a supplemental record may have been prepared and filed, but it is not in our
records. For the reasons set out in the text of this opinion, we cannot simply "assume" its
existence and contents. But, on remand, the record may be supplemented.

 One benefit of the decision in State v. Cullen, 195 S.W.3d 696, 698-99 (Tex. Crim. App.
2006), is that the losing party on a motion-to-suppress hearing in the trial court may require the
trial court to make findings of fact and conclusions of law in support of its ruling. Of course the
prevailing party may also request such findings, although the trial court is not required to make
them at that party's behest. When such findings are made, appellate courts are not left wondering
whether a particular issue was actually considered by the judge and ruled upon.
5. Amador, 187 S.W.3d. at 546. The appellate record contains only the reporter's record of
Officer Fountain's testimony. In several places that record refers to the playing of the videotape
for the witness, parties and the trial judge. It is unknown how much of the videotape was
actually viewed by the trial judge. But, as the court of appeals noted, at least some portion of the
videotape showing the field sobriety tests-specifically the one-leg-stand-was played for the trial
judge. Id.
6. Id. at 547.
7. Id. at 546-47. Appellant did not petition this Court for review of that decision.
8. Id. at 547-48.
9. Id. at 548. The court of appeals stated, 

 The State cites no authority for the proposition that the Rules of Appellate
Procedure require both a written motion and argument at an oral hearing to perfect
error. In reviewing defense counsel's argument to the trial court during the
hearing on [appellant's] motion to suppress, we also find [his] attorney stated,
"The burden of proving probable cause lies with the Government." Thus, even if
we accepted the State's argument, which we do not, the record does not support
its position.

Id. At the trial-court hearing on appellant's motion for reconsideration, no one mentioned the
term "probable cause to arrest." No one asked for a ruling on whether there was probable cause
to arrest. The parties and the trial court were focused solely upon the question of articulable
suspicion to detain appellant to conduct field-sobriety tests. Although appellant's written motion
to suppress and his motion for reconsideration mentioned probable cause to arrest, that issue was
never specifically brought to Trooper Fountain's attention, was barely mentioned by the defense
during the initial hearing, and was not referenced at all by the parties at the motion for
reconsideration. One might reasonably question whether a statement during closing argument 
fairly puts the opposing party and the trial judge on notice that a party is litigating the existence
of probable cause. See Martinez v. State, 91 S.W.3d 331, 335-36 (Tex. Crim. App. 2002) (noting
that both Tex. R. App. P. 33.1 and Tex. R. Evid. 103 are "'judge-protecting' rules of error
preservation," and the forfeiture of claims on appeal depends on "whether the complaining party
on appeal brought to the trial court's attention the very complaint that party is now making on
appeal"); Heidelberg v. State, 144 S.W.3d 535, 538-43 (Tex. Crim. App. 2004) (collecting cases
and noting that "one must look to the context of each case in order to see if the ground of the
objection was apparent" to the trial judge, and holding that an objection to evidence on federal
constitutional grounds did not put trial judge on notice of a claim that the evidence was barred by
Texas Constitution); Sedani v. State, 848 S.W.2d 314, 320 (Tex. App.-Houston [1st Dist.] 1993,
pet. ref'd) ("When a party is allowed to hide the reasons for its requested relief until the appeal,"
the two purposes for requiring a party to make a specific objection and "state reasons for any
ruling or judgment he desires" are defeated). However, the State did not petition for review on
this issue, and therefore we will not address it.
10. 187 S.W.3d at 548.
11. Id. at 549.
12. Id. 
13. Id. ("Because the trial court reviewed the videotape, a detailed description of
[appellant's] performance during the stop is unnecessarily cumulative.").
14. Russell v. State, 717 S.W.2d 7, 9 (Tex. Crim. App. 1986) ("When a defendant seeks to
suppress evidence on the basis of a Fourth Amendment violation, this Court has placed the
burden of proof initially upon the defendant . . . [who] must produce evidence that defeats the
presumption of proper police conduct and therefore shifts the burden of proof to the State.")
(citations omitted).
15. Id.
16. Id.
17. Ford v. State, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005).
18. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).
19. Montanez v. State, 195 S.W.3d 101, 109 (Tex. Crim. App. 2006).
20. Id. at 107.
21. Id.
22. Ford, 158 S.W.3d at 493.
23. See Rowell v. State, 66 S.W.3d 279, 282 (Tex. Crim. App. 2001) (rejecting State's
argument that "any omission in the record the appellant presents is presumed to support the trial
court's ruling"; concluding that Tex. R. App. P. 34.6 "permits and requires each party to see that
the reporter's record contains all that the appellate court needs. It is no longer necessary, or
sufficient, for a party to argue that the appeal should be decided by hypotheses about missing
portions of the record.").
24. Tex. R. App. P. 34.6(d).
25. 417 S.W.2d 170 (Tex. Crim. App. 1967).
26. Id. at 174 (op. on reh'g).
27. Id.
28. Id.
29. Id.
30. 43A George E. Dix & Robert O. Dawson, Texas Practice: Criminal Practice
and Procedure §43.349 at 606 (2d ed. 2001); see also Cornish v. State, 848 S.W.2d 144, 145
(Tex. Crim. App. 1993) (in review of Batson hearing, court would consider juror information
cards that were used by both the prosecutor and defense during hearing as if they had been
introduced into evidence and trial judge had stated "[t]he cards will speak for themselves";
"From this exchange it is apparent that the parties and the trial judge regarded the juror
information cards as a significant part of the evidence upon which a resolution of appellant's
Batson claim would depend."); Heberling v. State, 834 S.W.2d 350, 356 (Tex. Crim. App. 1992)
(collecting cases and holding that "in the absence of a timely objection, the display of a
photograph before the jury coupled with testimony concerning the contents of the photograph is
tantamount to introduction of the photograph into evidence"); State v. Brown, 929 S.W.2d 588,
591 (Tex. App.-Corpus Christi 1996, no pet.) (concluding that when it is clear that both the
parties and the trial judge treated an exhibit as evidence, the exhibit may be considered on appeal
as if admitted); Smith v. State, 859 S.W.2d 463, 465 (Tex. App.-Fort Worth 1993, pet. ref'd).
31. Tex. R. App. P. 34.6(e)(2); see Dix & Dawson, § 43.472 at 696 (discussing abatement
and remand for modification of reporter's record).
32. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); see also Manzi v. State,
88 S.W.3d 240, 243 (Tex. Crim. App. 2002) (holding that deference must be given to trial
court's findings even when those findings do not turn upon the assessment of credibility and
demeanor; stating, "Where there are two permissible views of the evidence, the factfinder's
choice between them cannot be clearly erroneous. This is so even when the district court's
findings do not rest on credibility determinations, but are based instead on physical or
documentary evidence or inferences from other facts.") (quoting Anderson v. City of Bessemer
City, 470 U.S. 564, 573-74 (1985)).
33. Kelly v. State, 163 S.W.3d 722, 726 (Tex. Crim. App. 2005).
34. See, e.g., Green v. State, 912 S.W.2d 189, 192 (Tex. Crim. App. 1995) ("This Court
does not decide cases based on speculation about matters not shown in the record."); Davis v.
State, 658 S.W.2d 572, 579 (Tex. Crim. App. 1983) (noting that "from the record of appeal, we
are informed that the bookstore contained magazines and books, and that the projectors inside the
booths probably had films different from the film entitled 'Little Yummy.' We are not, however,
told what the content and character of the magazines, books, or other films portrayed, revealed,
or depicted, and it is not our function to speculate upon what that might be."); compare Moss v.
State, 13 S.W.3d 877, 885 (Tex. App.-Fort Worth 2000, pet. ref'd) ("We do not have to
speculate about the contents of the transfer order, nor do we have to wonder whether the copy
before us is an accurate copy. The parties stipulated, and the trial court found, that the copy of 
the transfer order contained in the first supplemental clerk's record is accurate and complete."). 
35. Amador, 187 S.W.3d at 549.
36. 109 S.W.3d 456 (Tex. Crim. App. 2003).
37. Id. at 462, n.17. The court of appeals also cited Ortiz v. State, 144 S.W.3d 225, 230
(Tex. App.- Houston [14th Dist.] 2004, pet. ref'd), for the proposition that the appealing party
must "develop the record to show the nature and source of an error and, in same cases, its
prejudice to him." (emphasis in original).
38. Appellant's Brief at 14.
39. Guajardo, 109 S.W.3d at 462 n.17.
40. By contrast, in Guajardo, the defendant had the burden to bring forward a record on
appeal that showed that the trial court erred in denying his claim of collateral estoppel. He could
not show that the trial court erred without providing a copy of the testimony from the former trial
upon which he relied in the trial court. Id. at 462.
41. See Rowell, 66 S.W.3d at 282.
42. Tex. R. App. P. 34.6(d).
43. Appellant also claims that he used the videotape solely to impeach Trooper Fountain's
in-court testimony and not to establish any substantive fact. He argues that the court of appeals
was incorrect in stating that appellant "introduced" the videotape. While appellant is technically
correct that he did not formally "introduce" the videotape, the record shows that appellant "used"
the videotape for substantive purposes and relied upon its contents in arguing that he did not
stumble, was not slow in getting out of his car, and did not mumble. Appellant also expressly
relied upon the contents of that videotape in arguing at the motion for reconsideration that
Officer Fountain lacked articulable suspicion in detaining appellant after writing the warning
ticket. He offered to replay a portion of that tape to refresh the trial judge's recollection. Under
these circumstances, it cannot be denied that appellant relied upon the videotape in the trial court
for proof of his physical condition. We agree with the court of appeals that those portions of the
videotape that were played for the trial judge were treated as if they were formally introduced
into evidence. See Cornish, 848 S.W.2d at 145; Heberling, 834 S.W.2d at 356; Harden, 417
S.W.2d at 174.
44. Those sections read as follows:

 (d) Supplementation. If anything relevant is omitted from the reporter's record,
the trial court, the appellate court, or any party may by letter direct the official
court reporter to prepare, certify, and file in the appellate court a supplemental
reporter's record containing the omitted items. Any supplemental reporter's record
is part of the appellate record.
(e) Inaccuracies in the reporter's record.
 (1) Correction of inaccuracies by agreement. The parties may agree to
correct an inaccuracy in the reporter's record, including an exhibit, without
the court reporter's recertification.
(2) Correction of inaccuracies by trial court. If the parties cannot agree
on whether or how to correct the reporter's record so that the text
accurately discloses what occurred in the trial court and the exhibits are
accurate, the trial court must-after notice and hearing-settle the dispute. If
the court finds any inaccuracy, it must order the court reporter to conform
the reporter's record (including text and any exhibits) to what occurred in
the trial court, and to file certified corrections in the appellate court.
(3) Correction after filing in appellate court. If the dispute arises after the
reporter's record has been filed in the appellate court, that court may
submit the dispute to the trial court for resolution. The trial court must
then proceed as under subparagraph (e)(2).

Tex. R. App. P. 34.6(d) & (e).
45. 130 S.W.3d 866 (Tex. Crim. App. 2004).
46. Id. at 872; see also Routier v. State, 112 S.W.3d 554, 557 (Tex. Crim. App. 2003)
(stating, in capital murder appeal, that this Court had ordered the court reporter "to prepare,
certify, and file a supplemental reporter's record containing any omitted items. We also ordered
the trial court to resolve any dispute raised in the appellant's motion and to ensure that the
reporter's record conformed to what occurred at trial."). In Routier, this Court cited and relied
upon State Farm Fire & Cas. Ins. Co. v. Vandiver, 941 S.W.2d 343 (Tex App.-Waco 1997, no
pet.), a case in which the court reporter failed to take notes of portions of depositions that were
read into the record. We noted with approval that in Vandiver, the court of appeals held that the
reporter's tapes could be used to establish the pages and lines of the depositions and that the
record could be supplemented with those parts of the depositions that were actually read to the
jury even though the depositions were not themselves offered into evidence. Routier, 112
S.W.3d at 565.
47. Whitehead, 130 S.W.3d at 872.
48. The Texas Supreme Court has stated that "appellate courts must construe [the rules
governing correction of the appellate record] liberally so their decisions 'turn on substance rather
than procedural technicality.'" Gallagher v. Fire Ins. Exchange, 950 S.W.2d 370, 371 (Tex.
1997) (per curiam) (quoting Crown Life Ins. Co. v. Estate of Gonzalez, 820 S.W.2d 121, 121
(Tex. 1991) (per curiam)); see also Blondett v. State, 921 S.W.2d 469, 477 (Tex. App.-Houston
[14th Dist.] 1996, pet. ref'd) ( "The purpose of [predecessor to Rule 34.6(e)] is to create an
accurate record on appeal.").
49. Tex. R. App. P. 34.6(d).
50. Tex. R. App. P. 34.6(e)(3); see also Rowell, 66 S.W.3d at 282 & nn. 13 & 14; Killough
v. State, __ S.W.3d ___, ___ No. 10-06-00112-CR, 2007 Tex. App. LEXIS 179, *1 (Tex. App. -
Waco 2007, n.p.h.) (abating appeal for trial court to resolve dispute over the accuracy or
completeness of record of "a transcription of portions of a witness's statement recorded on a
DVD which was played to the jury for impeachment purposes but not introduced into
evidence."); Jaynes v. State, ___ S.W.3d __, __ No. 13-04-286-CR, 2006 Tex. App. LEXIS
10124, * 4-5 (Tex. App. - Corpus Christi 2006, n.p.h.) (discussing trial court hearing when case
abated under Rule 34.6(e) for resolution of dispute as to completeness and accuracy of trial
record).