S.W.3d 898 (Tex.2006); *Verburgt v. Dorner,* 959 S.W.2d 615, 616–17 (Tex.1997).

David Lee CLEMENT, Jr., Appellant

v.

The STATE of Texas, Appellee

No. 11–13–00055–CR

Court of Appeals of Texas,
Eastland.

Opinion filed May 7, 2015

Gregory Lowery, District Attorney, Lindy Borchardt, Assistant, Lisa C. McMinn, Stacey Meredith Goldstein, Assistant, for State of Texas.

Jim Shaw, Ray Napolitan, for Appellant.

Panel consists of: Wright, C.J., Willson, J., and Bailey, J.

## OPINION ON STATE'S MOTION FOR REHEARING

JOHN M. BAILEY, JUSTICE

The State has filed a motion for rehearing wherein it alleges that Appellant did not properly preserve, for appellate review, his complaint that his arrest was illegal. The State bases its preservation contention on two grounds: (1) that Appellant failed to put the State and the trial court on notice that he was contesting the legality of his arrest and (2) that Appellant's presentation of the contention during the closing argument was untimely under TEX. CODE CRIM. PROC. ANN. art. 28.01, § 2 (West 2006).

Preservation of error is a systemic requirement on appeal. *Ford v. State*, 305 S.W.3d 530, 532 (Tex.Crim.App. 2009). If an issue has not been preserved for appeal, an intermediate court of appeals should not address the merits of that issue. *Id.* Even though the State did not assert a preservation contention in its initial briefing, we previously reviewed the question of preservation of error on our own initiative and tacitly addressed it in our original opinion by listing the instances wherein Appellant's counsel addressed the probable cause supporting Appellant's arrest. *See id.* at 532–33 ("Ordinarily, a court of appeals should review preservation of error on its own motion."); *Jones v. State*, 942 S.W.2d 1, 2 n. 1 (Tex.Crim.App. 1997) ("Preservation of error is a systemic requirement that a first-level appellate

court should ordinarily review on its own motion.").

■ There are three distinct types of police-citizen interactions: (1) consensual encounters that do not implicate the Fourth Amendment; (2) investigative detentions that are Fourth Amendment seizures of limited scope and duration that must be supported by a reasonable suspicion of criminal activity; and (3) arrests, the most intrusive of Fourth Amendment seizures, that are reasonable only if supported by probable cause. *Wade v. State*, 422 S.W.3d 661, 667 (Tex.Crim.App.2013); *State v. Woodard*, 341 S.W.3d 404, 410–11 (Tex.Crim.App.2011). The facts in this appeal essentially present three "seizures" for the purpose of analysis under the Fourth Amendment: (1) Trooper Johnson's initial traffic stop of Appellant; (2) Trooper Johnson's continued detention of Appellant for the purpose of investigating a possible offense of driving while intoxicated; and (3) Trooper Johnson's arrest of Appellant for driving while intoxicated.

In the context of the three types of police-citizen interactions described above, Trooper Johnson's initial stop and then his continued detention of Appellant for investigative purposes was an "investigative detention" that must have been supported by reasonable suspicion.[1] *See Davis v. State*, 947 S.W.2d 240, 244–45 (Tex.Crim.App. 1997) (If an officer develops reasonable suspicion during a valid traffic stop that the detainee is engaged in criminal activity, continued detention is justified.). Trooper Johnson's subsequent arrest of Appellant constituted another level of seizure that must have been supported by the heightened standard of probable cause in order to satisfy the Fourth Amendment. *See Derichsweiler v. State*, 348 S.W.3d 906, 916 (Tex.Crim.App.2011) (citing *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990)) ("A brief investigative detention constitutes a significantly lesser intrusion upon the privacy and integrity of the person than a full-blown custodial arrest. For this reason, a warrantless investigative detention may be deemed 'reasonable' for Fourth Amendment purposes on the basis of a lesser quantum or quality of information—reasonable suspicion rather than probable cause.").

■ As noted in our original opinion, the State treated Appellant's written motion to suppress as solely an attack on the arresting officer's basis for initiating the traffic stop. In this regard, Appellant's motion to suppress addressed the credibility of the anonymous tip and its corroboration by the investigating officer. The prosecutor easily overcame this contention by establishing that Trooper Johnson stopped Appellant for a speeding violation rather than upon reliance on the anonymous tip. However, Appellant also alleged a lack of probable cause, the standard that is associated with the required basis for supporting an arrest. Furthermore, the inquiry at the hearing on the motion to suppress into Trooper Johnson's actions did not end with his initial basis for stopping Appellant. Specifically, Appellant's counsel inquired on cross-examination about what transpired after the stop. As we stated in the original opinion:

> seizures for the purposes of our analysis because Appellant challenged Trooper Johnson's basis for initiating the traffic stop but Appellant did not challenge Trooper Johnson's basis for continuing the investigative stop prior to his arresting Appellant.

---

1. One might contend that Trooper Johnson's initial stop of Appellant, followed by his continued detention of Appellant for investigative purposes, constituted a single seizure because they are portions of the same investigative detention. We are treating them as separate

Appellant's counsel further elicited testimony from Trooper Johnson during cross-examination that Appellant refused to perform any field sobriety tests and that Appellant told Trooper Johnson what he had to drink. Near the end of counsel's brief cross-examination, he asked Trooper Johnson: "So, you arrested him, based upon the odor of alcohol on his breath?" Trooper Johnson replied in the affirmative.

During closing arguments on the motion to suppress, Appellant's counsel argued as follows:

> And he smells alcohol on his breath, so he doesn't do any tests, doesn't do anything. No evidence of intoxication except alcohol on his breath, and he's arrested for DWI.
>
> It's our position that anything after the stop should be suppressed, because there's no probable cause for his arrest.
>
> The arrest led to an interview. The interview led to a mandatory blood draw, based upon the belief that it was his third DWI.

We concluded that Appellant preserved his complaint regarding the probable cause supporting his arrest based in part on counsel's closing argument to the trial court that "there's no probable cause for [Appellant's] arrest."

The clearest assertion by Appellant that Trooper Johnson lacked probable cause to arrest him occurred during the closing statement when defense counsel said: "[T]here's no *probable cause for his arrest*" (emphasis added). The State contends that this statement did not constitute a challenge to the legality of Appellant's arrest because it followed counsel's request to suppress "anything after the *stop*" The State argues that the alleged violation was incongruous with the requested relief because the illegality of the subsequent arrest would not preclude the admissibility of evidence seized prior to the illegal arrest. The State is essentially asserting that, when defense counsel made this argument, Appellant was challenging Trooper Johnson's initial basis for stopping Appellant. We disagree with the State's very narrow reading of defense counsel's argument.

Trooper Johnson's arrest of Appellant constituted a seizure under the Fourth Amendment that required a showing under the heightened standard of probable cause. Defense counsel's argument invoked the probable cause standard in challenging Appellant's arrest. We disagree that defense counsel's overstatement of the relief to which he may have been entitled nullified Appellant's challenge to the legality of his arrest. Defense counsel's argument suggests that evidentiary items were obtained as a result of Appellant's arrest, including lab results from a mandatory blood draw. Accordingly, the reference to suppressing evidentiary items recovered after the stop would apply to those seized after the arrest.

Defense counsel's argument was not the only reference to Appellant's contention of an illegal arrest. As noted previously, Trooper Johnson was specifically asked, "So, you arrested him, based upon the odor of alcohol on his breath?" Additionally, in Appellant's written motion to suppress, he referenced probable cause, the standard associated with arrests under the Fourth Amendment.[2]

---

**2.** The Texas Court of Criminal Appeals has stated that "[o]ne might reasonably question whether a statement during closing argument fairly puts the opposing party and the trial judge on notice that a party is litigating the existence of probable cause." *Amador v. State,* 221 S.W.3d 666, 671 n. 9 (Tex.Crim. App.2007) (*"Amador I"*). However, the court did not address the preservation issue in *Amador I* because the State did not petition for

A "point of error on appeal must comport with the objection made at trial." *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim.App.2002). As stated in *Resendez v. State*, 306 S.W.3d 308 (Tex.Crim.App. 2009):

> Rule 33.1(a) of the Texas Rules of Appellate Procedure provides that a complaint is not preserved for appeal unless it was made to the trial court "by a timely request, objection or motion" that "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context."

*Resendez*, 306 S.W.3d at 312 (quoting Tex. R. App. P. 33.1(a)(1)(A)). "The purpose of requiring a specific objection in the trial court is twofold: (1) to inform the trial judge of the basis of the objection and give him the opportunity to rule on it; (2) to give opposing counsel the opportunity to respond to the complaint." *Id.* As explained in *Resendez*:

> Although there are no technical considerations or forms of words required to preserve an error for appeal, a party must be specific enough so as to "let the trial judge know what he wants, why he thinks himself entitled to it, and do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it."

*Id.* at 312–13 (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex.Crim.App.1992)).

We concluded that Appellant preserved his complaint of an illegal arrest occurring without probable cause because he ap-prised the trial court of his complaint at a time when the trial court was in a position to grant his requested relief. Additionally, Appellant cited the Fourth Amendment as a basis for his motion to suppress, thereby alerting the State and the trial court of the legal basis of his challenge: the Fourth Amendment. *Buchanan v. State*, 207 S.W.3d 772, 773, 776 (Tex.Crim.App.2006), relied upon by the State, is inapposite. There, the court essentially held that a motion to suppress based upon federal and state constitutional principles, not upon statutory grounds, was not sufficient, in the context of the motion, to also preserve error under Chapter 14 of the Code of Criminal Procedure. *Buchanan*, 207 S.W.3d at 773, 776. Here, the motion and the trial court's ruling were based upon clearly stated Fourth Amendment grounds.

With respect to the State's timeliness assertion under Article 28.01, section 2, the State has not cited any authority that this timing requirement for pretrial motions trumps the timeliness requirement for preservation of error under Rule 33.1. Additionally, the State did not present this argument to the trial court for consideration, thereby depriving Appellant of the opportunity to respond to it. Accordingly, it is not a "theory of law applicable to the case" that is available to justify the trial court's erroneous ruling on Appellant's motion to suppress. *See State v. Esparza*, 413 S.W.3d 81, 89–90 (Tex.Crim.App.2013).

As we noted in our original opinion, a defendant seeking to suppress evidence on the basis of an alleged violation of the Fourth Amendment bears the initial burden of rebutting the presumption

review on the issue. *Id.* The court noted in *Amador I* that the Beaumont Court of Appeals decided the preservation issue adversely to the State. 221 S.W.3d at 671 n. 9; *see Amador v. State*, 187 S.W.3d 543, 548 (Tex.App.— Beaumont 2006), *rev'd*, 221 S.W.3d 666 (Tex. Crim.App.2007). The court's concern expressed in *Amador I* is inapplicable to the facts in this case because of the other instances wherein Appellant challenged his arrest.

of proper police conduct. *Young v. State*, 283 S.W.3d 854, 872 (Tex.Crim.App.2009); *Amador I*, 221 S.W.3d at 672. A defendant meets this burden by demonstrating that the challenged search or seizure occurred without a warrant. *Young*, 283 S.W.3d at 872; *Amador I*, 221 S.W.3d at 672. The burden then shifts to the State to prove that the search or seizure was reasonable under the totality of the circumstances. *Young*, 283 S.W.3d at 872; *Amador I*, 221 S.W.3d at 672–73. The Texas Court of Criminal Appeals has described the State's burden in this situation as follows:

> When a defendant asserts a search and seizure violation under the Fourth Amendment, the defendant bears the burden of producing evidence to rebut the presumption of proper conduct by law enforcement. A defendant can satisfy this burden with evidence that the seizure occurred without a warrant. If the defendant satisfies the initial burden, the burden then shifts to the State to establish that the seizure was nevertheless reasonable under the applicable standard—either reasonable suspicion *or probable cause.*

*Woodard*, 341 S.W.3d at 412 (emphasis added) (footnotes omitted) (citing *Amador v. State*, 275 S.W.3d 872, 878 (Tex.Crim. App.2009) (*Amador II* )).

As we stated in our original opinion, "[I]t is undisputed that no warrant was issued for Appellant's arrest. As a result, the State bore the burden of establishing the reasonableness of Appellant's detention and arrest."[3] Although the State met its burden to establish the reasonableness of the initial stop, the State did not develop the record to support the continued investigatory detention of Appellant after the

initial stop or the subsequent arrest of Appellant. Even though a portion of the facts pertaining to Appellant's continued detention and subsequent arrest were developed during Trooper Johnson's cross-examination, the evidence did not address "the totality of the circumstances facing the arresting officer." We reviewed the portion of the supporting facts adduced at trial and concluded that they did not constitute probable cause under an objective standard.

The State additionally contends in its motion for rehearing that we used the wrong standard for determining probable cause wherein we stated:

> To hold otherwise would require us to speculate on what other factors, if any, Trooper Johnson may have relied upon in arresting Appellant, including Appellant's refusal to perform field sobriety tests, [footnote omitted] Appellant's response to the question regarding what he had been drinking, Appellant's speeding violation, and Appellant's act of almost striking a guardrail.

The State contends that this statement indicates that we relied upon a subjective test rather than an objective test for determining probable cause. We disagree. The above-quoted statement followed a sentence wherein we commented "on the very limited record developed at the hearing on the motion to suppress regarding Trooper Johnson's basis for arresting Appellant." Simply put, we were expressing our dilemma in conducting an analysis of the totality of the circumstances facing the arresting officer on a very limited record rather than basing our analysis on Trooper Johnson's subjective beliefs.

---

**3.** The hearing on the motion to suppress began with the prosecutor stating, "The State will stipulate that he was stopped without warrant.... And, therefore, the burden shifts to the State for probable cause of action."

Finally, we note that a pretrial motion to suppress evidence is "nothing more than a specialized objection to the admissibility of that evidence" that is interlocutory in nature. *Black v. State*, 362 S.W.3d 626, 633 (Tex.Crim.App.2012). As such, a pretrial motion to suppress evidence may be the subject of reconsideration and revision as is any other ruling on the admissibility of evidence. *Id.* Accordingly, the State will not be precluded from seeking a reconsideration of the suppression on a more fully developed record upon the remand of this case to the trial court.

The State's motion for rehearing is denied.