**Opinion filed February 11, 2021**



# In The

# Eleventh Court of Appeals

_____

## No. 11-18-00360-CR

_____

### DAVID LEE TREVINO, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 104th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 20882B**

## M E M O R A N D U M   O P I N I O N

In a two-count indictment, the grand jury indicted Appellant, David Lee Trevino, for the offense of possession with intent to deliver methamphetamine and the lesser included offense of possession of methamphetamine. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.112(a), (d), .115(a), (d) (West 2017). After the trial court denied his motion to suppress evidence of the discovered methamphetamine, Appellant pleaded guilty to the offense of possession with intent to deliver methamphetamine. The trial court accepted Appellant's guilty plea, assessed his

punishment in accordance with the plea-bargain agreement, and sentenced him to imprisonment for seven years.  In his sole issue on appeal, Appellant challenges the trial court's denial of his motion to suppress.  We affirm.

I. *Factual Background*

Appellant was initially detained when agents with the Abilene Police Department Special Operations Division executed a search warrant for narcotics at a known "dope house."  Appellant was not identified as a suspect in the search warrant, but he was arrested at the location where the search warrant was executed after a baggie containing methamphetamine was discovered in his pocket.

Agent Gary Castillo had obtained a no-knock warrant to search the "dope house" and to apprehend an individual known to reside there.  The warrant was obtained based on information received from a reliable confidential informant.  Agent Castillo arranged for surveillance on the "dope house" before he and his team executed the warrant.  From his location south of the house, Agent Castillo observed a silver-gray vehicle pull into the driveway of the house, park there for a few minutes, back out of the driveway, and then immediately "reverse[] back into the driveway" to park near the front door.  Agent Castillo could not see whether anyone got out of the vehicle, but it was still parked near the front door of the house when the agents approached the house approximately fifteen minutes later.  At the time, Appellant was sitting in the passenger seat of the vehicle.

At the hearing on Appellant's motion to suppress, Agent Derrick Franklin testified that he approached the vehicle while Agent Castillo and the other agents went inside the house.  Agent Franklin told Appellant to get out of the vehicle, and Appellant complied.  He then handcuffed and detained Appellant for safety reasons.  According to Agent Franklin, he was the only officer present when he initially contacted and detained Appellant in the driveway of the house.  Agent Franklin said that he did not frisk Appellant for weapons because Appellant was already

2

handcuffed and because he wanted Agent Castillo, the case agent, to interact with Appellant.

Agent Castillo walked out of the house a short time later, at which point he told Appellant that he intended to conduct a weapons pat-down of Appellant for officer safety. Agent Castillo testified that, as he frisked Appellant for weapons, he noticed "the tip of a clear . . . Ziploc baggie protruding out of [Appellant's] front watch pocket." According to Agent Castillo, he asked Appellant if he could retrieve what had been detected in Appellant's pocket, and Appellant responded, "I guess." Agent Castillo then removed the baggie from Appellant's pocket and saw that the baggie contained an off-white crystal substance that Agent Castillo believed to be methamphetamine. Agent Castillo then searched Appellant's other pockets and found three more clear baggies that contained methamphetamine.

Appellant also testified at the hearing. According to Appellant, two officers approached the parked vehicle while other officers went into the house. Agent Franklin had his gun drawn and pointed toward Appellant as another officer asked Appellant to get out of the vehicle. The other officer handcuffed Appellant and then immediately asked for consent to search his person. Appellant testified that, during the weapons pat-down, the other officer asked for Appellant's consent to search four or five more times. Although Appellant continuously refused to consent, the other officer "just went ahead and did it." Appellant also claimed that the baggie found in his pocket was not visible before the officer removed it and that Agent Franklin had his weapon drawn and pointed at Appellant throughout this entire exchange.

Agent Franklin testified that he was not present when Agent Castillo asked Appellant for consent to search, that he did not see the plastic baggie that Agent Castillo retrieved from Appellant's pocket, and that he did not hear any of the dialogue between Appellant and Agent Castillo.

3

After it heard the evidence, the trial court denied Appellant's motion to suppress. Subsequently, Appellant pleaded guilty to the offense of possession with intent to deliver methamphetamine. On appeal, Appellant contends that the trial court erred when it denied his motion to suppress because the search that led to the discovery of the methamphetamine was unlawful. Appellant specifically asserts that the officers had no probable cause to continue to detain him after the weapons pat-down and that Appellant did not consent to the search of his person. We disagree.

## II. *Standard of Review*

In reviewing a trial court's ruling on a motion to suppress, we apply a bifurcated standard of review. *Brodnex v. State*, 485 S.W.3d 432, 436 (Tex. Crim. App. 2016); *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013); *Martinez v. State*, 348 S.W.3d 919, 922–23 (Tex. Crim. App. 2011). We afford almost total deference to the trial court's determination of historical facts, especially when a trial court's fact findings are based on an evaluation of credibility and demeanor. *Brodnex*, 485 S.W.3d at 436; *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). The same deference is afforded the trial court with respect to its rulings that concern the application of the law to questions of fact and to mixed questions of law and fact if the resolution of those questions turn on the weight or credibility of the evidence. *Brodnex*, 485 S.W.3d at 436; *see Lerma v. State*, 543 S.W.3d 184, 190 (Tex. Crim. App. 2018). We review de novo whether the presented facts are sufficient to give rise to reasonable suspicion in a case. *Lerma*, 543 S.W.3d at 190.

When the record is silent as to the reasons for the trial court's ruling, as in the case before us, we review the evidence adduced at the suppression hearing in the light most favorable to the trial court's ruling, infer the necessary fact findings that support the trial court's ruling if the evidence supports those findings, and assume that the trial court made implicit findings to support its ruling. *State v. Garcia-Cantu*,

4

253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *see Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007); *Carmouche v. State*, 10 S.W.3d 323, 327–28 (Tex. Crim. App. 2000).

At a hearing on a motion to suppress, the trial court is the exclusive trier of fact and judge of the credibility of the witnesses. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). As such, the trial court may choose to believe or to disbelieve all or any part of a witness's testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); *Johnson v. State*, 803 S.W.2d 272, 287 (Tex. Crim. App. 1990). We will sustain the trial court's ruling on a motion to suppress if it is supported by the record and if it is correct under any applicable theory of law. *Lerma*, 543 S.W.3d at 190; *Ross*, 32 S.W.3d at 855–56.

### III. *Analysis*

The Fourth Amendment to the United States Constitution guarantees protection to persons from unreasonable searches and seizures by government officials. U.S. CONST. amend. IV; *see Hubert v. State*, 312 S.W.3d 554, 560 (Tex. Crim. App. 2010); *Wiede*, 214 S.W.3d at 24. There are three distinct types of police–citizen interactions: "(1) consensual encounters that do not implicate the Fourth Amendment; (2) investigative detentions that are Fourth Amendment seizures of limited scope and duration that must be supported by a reasonable suspicion of criminal activity; and (3) arrests, the most intrusive of Fourth Amendment seizures, that are only reasonable if supported by probable cause." *Wade v. State*, 422 S.W.3d 661, 667 (Tex. Crim. App. 2013); *see State v. Woodard*, 341 S.W.3d 404, 410–11 (Tex. Crim. App. 2011) (citing *Florida v. Bostick*, 501 U.S. 429, 434 (1991); *Gerstein v. Pugh*, 420 U.S. 103, 111–12 (1975); *Terry v. Ohio*, 392 U.S. 1, 30–31 (1968)). Here, the officers' encounter with Appellant escalated into an investigative detention when Agent Franklin handcuffed Appellant. *See State v. Castleberry*, 332 S.W.3d 460, 466 (Tex. Crim. App. 2011).

The temporary, warrantless detention of an individual by law enforcement personnel constitutes a seizure within the meaning of the Fourth Amendment and must be reasonable. *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). To justify the detention, a law enforcement officer's actions must be supported by reasonable suspicion. *Id.* Reasonable suspicion for a detention exists when a law enforcement officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead the officer to reasonably suspect that the detained person has engaged in, is presently engaging in, or soon will engage in criminal activity. *Id.*; *see also Wade*, 422 S.W.3d at 668; *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). This is an objective standard that disregards the actual subjective intent of the officer and focuses, instead, on whether there was an objectively justifiable basis for the detention. *Derichsweiler*, 348 S.W.3d at 914. The standard also looks to the totality of the circumstances. *Id.* Individual circumstances may appear to be innocent enough in isolation; however, if the circumstances combine to reasonably suggest the imminence of criminal conduct, an investigative detention by the officer is justified. *Id.* Whether the facts known to the officer rise to the level of reasonable suspicion is a mixed question of law and fact that we review de novo. *State v. Mendoza*, 365 S.W.3d 666, 669–70 (Tex. Crim. App. 2012).

A law enforcement officer who has temporarily and lawfully detained a person may conduct a protective pat-down search of the person for the presence of weapons if the officer reasonably suspects that the individual is armed and dangerous. *Lerma*, 543 S.W.3d at 191; *Carmouche*, 10 S.W.3d at 329. The officer need not be "absolutely certain that the individual is armed." *Worthey v. State*, 805 S.W.2d 435, 437 (Tex. Crim. App. 1991) (quoting *Terry*, 392 U.S. at 27). Rather, the officer must be able to point to specific and articulable facts that reasonably lead to the conclusion that the individual might possess a weapon. *Lerma*, 543 S.W.3d at 191; *Carmouche*,

6

10 S.W.3d at 329. Nevertheless, the officer's subjective level of fear is not controlling. *Lerma*, 543 S.W.3d at 191. In this context, an objective assessment of the officer's actions based on the facts and circumstances surrounding the detention forms the basis for reasonable suspicion and the justification for the pat-down search. *Id.*; *see also O'Hara v. State*, 27 S.W.3d 548, 551 (Tex. Crim. App. 2000) ("The issue is whether a reasonably prudent person would justifiably believe that his safety or that of others was in danger."); *Griffin v. State*, 215 S.W.3d 403, 409 (Tex. Crim. App. 2006) (recognizing, generally, that it is objectively reasonable for a law enforcement officer to believe that individuals involved in the "drug business" are armed and dangerous).

The purpose of a pat-down search is not to discover evidence of a crime, but to permit a law enforcement officer to pursue his investigation without fear of violence. *Carmouche*, 10 S.W.3d at 329; *see Terry*, 392 U.S. at 29. "The sole justification of the search . . . is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." *Terry*, 392 U.S. at 29. Furthermore, an officer may place a suspect in handcuffs for purposes of protecting and ensuring the officer's safety before performing a pat-down search of the suspect when reasonably necessary given the circumstances of the investigative detention. *See Rhodes v. State*, 945 S.W.2d 115, 117–18 (Tex. Crim. App. 1997).

Here, the initial detention of Appellant was justified based on Appellant's presence on the premises where law enforcement officials were executing a search warrant. *See Bailey v. United States*, 568 U.S. 186, 202 (2013) (holding that detentions incident to the execution of a search warrant are reasonable under the Fourth Amendment); *Dixon v. State*, 206 S.W.3d 613, 619 n.24 (Tex. Crim. App. 2006) (noting that "it is well-established that when officers have probable cause to

search a person or location, they may temporarily detain those persons or others who arrive during the search" (citing *Muehler v. Mena*, 544 U.S. 93, 98 (2005))). As we have noted, when law enforcement officers initially encountered Appellant, he was in the immediate vicinity of the house at which they were executing a no-knock search warrant. Agent Franklin testified that Appellant's presence as agents were entering the house was a safety issue and that Appellant was handcuffed and detained to prevent him from potentially alerting anyone who might be inside that law enforcement intended to enter the house. We conclude that law enforcement's detention of Appellant was objectively reasonable under the circumstances.

The record before us further shows that the weapons frisk was justified. *See Lerma*, 543 S.W.3d at 191. The no-knock search warrant was obtained by agents with the Abilene Police Department's Special Operations Division based on a reliable confidential informant's knowledge of the presence of narcotics at the house to be searched. The agents obtained the warrant as a no-knock warrant because of their belief that weapons could be present at the house and because of the confidential informant's warning that there was "a high possibility" that weapons would be present. Before acting on the warrant, Agent Castillo observed a vehicle enter, exit, and reenter the driveway of the house. He testified that, based on his training and experience, the vehicle's movements were suspicious and consistent with a drug transaction because people who sell narcotics at "dope houses" tend to maneuver and park their vehicles into positions that will facilitate an immediate departure. Therefore, viewing the evidence in the light most favorable to the trial court's ruling, we hold that the articulated facts and circumstances offered by the State concerning Appellant's detention justified Agent Castillo's suspicion of Appellant's involvement in criminal activity and the reasonable belief that the possible existence of weapons on his person created a potential danger to the officers and agents who were present.

8

Appellant argues that the police did not have probable cause for a warrantless, nonconsensual search because the initial detention "did not produce any verifiable evidence of possession of a controlled substance" and the weapons frisk "was fruitless for verifiable evidence." Although additional justification is required to lawfully prolong a valid detention, consent to search is a well-established exception to the Fourth Amendment's warrant and probable cause requirements. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *Carmouche*, 10 S.W.3d at 331; *State v. Ibarra*, 953 S.W.2d 242, 243 (Tex. Crim. App. 1997); *Myers v. State*, 203 S.W.3d 873, 886 (Tex. App.—Eastland 2006, pet. ref'd). We note that, in his brief, Appellant disputes the existence—not the voluntariness—of his consent. However, his contention ignores the fact that the State maintains that, based on Agent Castillo's testimony, Appellant consented to the search of his person after his pat-down search.

At a hearing on a motion to suppress, the trial judge is the sole trier of fact and judge of the credibility of witnesses and the weight to be given to their testimony. *Lerma*, 543 S.W.3d at 190; *Maxwell*, 73 S.W.3d at 281. Contrary to Agent Castillo's testimony, Appellant denies that he consented to the search and claims that he did not respond "I guess" when consent to search was requested. He testified that, while he might have said at one point, "You're going to search me anyway," he was asked again for his consent and repeatedly said "no." Although the record contains a police body-cam video recording from the day of the search, no footage exists of the exchange that occurred between Agent Castillo and Appellant prior to the discovery of methamphetamine in Appellant's pocket. As such, the propriety of the search turned on a credibility determination to be resolved by the trial court.

As we have said, the trial court heard conflicting evidence and, as the factfinder, was required to resolve those conflicts in the evidence. Because the trial court was at liberty to believe or to disbelieve all or part of the witnesses' testimony,

we defer to its conclusions regarding the witnesses' credibility. *Ross*, 32 S.W.3d at 855; *Johnson*, 803 S.W.2d at 287. In this instance, the trial court was free to believe, and could have reasonably determined, that Appellant consented to the search of his person. We have reviewed the evidence in the light most favorable to the trial court's ruling, and we infer that the trial court resolved the credibility determination in favor of Agent Castillo and predicated its ruling on a finding that Appellant consented to the search. We will not substitute our judgment for that of the factfinder and therefore defer to the trial court's implied finding of consent. Therefore, under the totality of circumstances and the standards of review we have outlined, we cannot say that the trial court abused its discretion when it denied Appellant's motion to suppress.

Because the detention and search of Appellant were lawful, the trial court did not err when it denied Appellant's motion to suppress. Accordingly, we overrule Appellant's sole issue on appeal.

## IV. *This Court's Ruling*

We affirm the judgment of the trial court.


W. STACY TROTTER

JUSTICE


February 11, 2021

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.